# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

ROBERT MORRIS,

     Petitioner,

v.                                CASE NO. 8:06-CV-1289-T-27TGW

SECRETARY, DEPARTMENT
OF CORRECTIONS,

     Respondent.

_____/

## O R D E R

This cause is before the Court on Petitioner Robert Morris' (hereinafter "Petitioner" or "Morris") petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 (hereinafter "petition") (Dkt. 1). Petitioner is a Florida prisoner under sentence of death. Petitioner filed a memorandum in support of the petition (hereinafter "memo") (Dkt. 5). Respondent filed a response to the petition (Dkt. 14), and Petitioner filed a reply to the response (Dkt. 19). Upon consideration of each of Petitioner's claims, the Court has determined that none have merit and that Petitioner's request for federal habeas relief (Dkt. 1) is **DENIED.**

## BACKGROUND

Petitioner was convicted in 1999 of first-degree murder, burglary of a dwelling, and robbery with a deadly weapon. He was sentenced to death. Petitioner's convictions and sentence were affirmed by the Florida Supreme Court on February 21, 2002. *See Morris v. State*, 811 So.2d 661 (Fla. 2002). Petitioner initiated state court postconviction proceedings in March 2003. In July 2004, the state trial court denied Petitioner's postconviction motion, after conducting an evidentiary

hearing. On April 20, 2006, the Florida Supreme Court affirmed the denial of Petitioner's post-conviction motion. *See Morris v. State*, 931 So.2d 821 (Fla. 2006). The Florida Supreme Court's mandate issued on June 19, 2006. Petitioner also filed a state Petition for Writ of Habeas Corpus in the Florida Supreme Court on February 3, 2005. The Florida Supreme Court denied that petition on April 20, 2006. *See Morris v. State*, 931 So.2d 821 (Fla. 2006).

Petitioner filed the instant federal habeas petition on July 12, 2006.

FACTS[1]

On the morning of September 2, 1994, the body of the 88-year-old victim, Violet Livingston, was found in her Lakeland apartment by her son. When the police responded to the murder scene, they found the victim lying on her bedroom floor between two beds. Her head was wrapped tightly in bed sheets. There was blood on the walls, the furniture, and her walking cane, which was on one of the beds. Both bedrooms were in disarray.

The point of entry to the apartment appeared to be the kitchen window on the south side of the apartment. The screen was off the window and was leaning against the building. The window was shut but the glass was broken. Window latches and broken glass were found on the ground. Near the window was a yellow chair sitting underneath the porch light. The porch light cover was off the fixture and was lying on the ground.

According to the associate medical examiner, Dr. Alexander Melamud, the victim died as a result of multiple injuries. She had sustained bruises, lacerations, abrasions, rib fractures, brain hemorrhage, and mechanical asphyxia due to suffocation. Some of the injuries were consistent

---

[1]The facts are taken from the Florida Supreme Court's opinion affirming Petitioner's convictions on direct appeal. *Morris v. State*, 811 So.2d 661, 662-64 (Fla. 2002).

with her having been beaten with her walking cane. There were neck injuries consistent with strangulation, and wounds to her right forearm, hand, and knee, which could be classified as defensive wounds. Dr. Melamud could not determine the sequence of the injuries, or when the victim became unconscious, but he determined she was alive for a short period of time after the attack began.

At trial, the four main categories of evidence the State presented against Morris were: (1) DNA test results; (2) Morris's fingerprint on a lightbulb outside the victim's residence; (3) Morris's possession of various items taken from the victim's residence; and (4) the testimony of Damion Sastre, a jailhouse informant. Additionally, the State presented further inculpatory evidence that Morris had healing scars on his forearms and hands, and that the police obtained a bloody glove from Morris's apartment. First, the State's DNA experts testified that Morris could not be excluded as the source of the DNA obtained from two locations on the victim's body and from the kitchen curtain. According to the State's population geneticist, the frequency of this DNA pattern in the African-American database would be 1 in 7.1 million (meaning the chance that the DNA was not from Morris was between 1 in 710,000 to 1 in 71 million). Morris presented his own population geneticist, who testified that the frequency of the DNA pattern within the African-American population is 1 in 2.2 million.

Second, the police obtained a total of eleven fingerprints of value for comparison from the interior and exterior of the victim's apartment. No prints found inside the victim's apartment matched Morris's fingerprints. However, a single print, obtained from the partially unscrewed lightbulb outside the kitchen window, was later matched to Morris. Of the remaining prints, one print belonged to the victim's son, four belonged to a police department intern, and five were

3

never matched to anyone.

Third, the police found several items known to have belonged to the victim in and around Morris's residence. These included coin wrappers, coin booklets, a coin sorter, and a television. Additionally, witnesses who worked at a sandwich shop and a gas station near the victim's apartment identified Morris as the man who purchased items with rare coins that were missing from the victim's coin collection.

Finally, Damion Sastre, a convicted felon, testified that Morris told him in jail that Morris committed the murder. Sastre testified that because Morris told Sastre that Morris had previously stolen a bicycle from the victim's apartment complex, Sastre suggested that Morris testify that he touched the lightbulb during that previous theft. However, Sastre also testified that Morris told him there was a screened porch into which Morris had to cut a slit to gain access to the victim's apartment, but then acknowledged, upon being shown a photograph on cross-examination, that there was no screened porch to the victim's apartment.

Morris took the stand in his own defense and stated that he did not kill the victim or break into her apartment. He testified that he went to the victim's apartment complex to play basketball, but nobody was there. He then stated that he remembered that a friend had asked him if he could get a bicycle for her, so he walked to the back of the apartments and saw a bike on the top stairs. Morris admitted he unscrewed the lightbulb on the victim's porch and went upstairs. However, he testified that he was unable to obtain the bicycle because it was secured by a lock. He testified that on his way home, he found a brown paper sack containing a coin sorter, coin books, a chain necklace, and some little bags containing coins. He spent the coins in a neighborhood sandwich shop and a gas station. Morris further testified that he never told Sastre that he killed the victim,

took coins out of her apartment, or gained entry through a screened porch. Finally, Morris testified that Sastre must have obtained the information about which Sastre testified by looking at Morris's discovery materials to which Sastre had access in prison.

The jury convicted Morris of first-degree murder, armed burglary of a dwelling or battery committed during burglary of a dwelling, and robbery with a deadly weapon.

## STANDARDS OF REVIEW

Because Petitioner filed his petition after April 24, 1996, this case is governed by 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). *Penry v. Johnson*, 532 U.S. 782, 792 (2001); *Henderson v. Campbell*, 353 F.3d 880, 889-90 (11th Cir. 2003); *Maharaj v. Sec'y of Dept. of Corrections*, 304 F.3d 1345, 1346 (11th Cir. 2002). The ultimate issue with respect to each claim is whether the Florida Supreme Court's resolution of the claim was "contrary to, or involved an unreasonable application of, clearly established Federal law as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d). *Williams v. Taylor*, 529 U.S. 362 (2000); *Robinson v. Moore*, 300 F.3d 1320 (11th Cir. 2002); *Van Poyck v. Florida Department of Corrections*, 290 F.3d 1318 (11th Cir. 2002). The standard Petitioner must meet could not be higher; it is not enough that the state court "got it wrong." Petitioner must show that the result of the state court's decision was objectively unreasonable. *Bell v. Cone*, 535 U.S. 685, 694 (2002) (citing *Williams v. Taylor, supra*).

In the event constitutional error is found in a habeas proceeding, the relevant harmless error standard is set forth in *Brecht v. Abrahamson*, 507 U.S. 619 (1993). The test is "less onerous" then the harmless error standard enunciated in *Chapman v. California*, 386 U.S. (1967). "The test is whether the error had substantial and injurious effect or influence in determining the

jury's verdict. Under this standard, habeas petitioners may obtain plenary review of their constitutional claims, but they are not entitled to habeas relief based on trial error unless they can establish that it resulted in 'actual prejudice.'" *Brecht*, 507 U.S. at 637. Although no constitutional error has occurred in Petitioner's case, any possible error would be harmless beyond any reasonable doubt based on the facts and the record herein.

No evidentiary hearing is required because none of Petitioner's claims turn on any unresolved issue of fact. All involve issues of law argued on the basis of the existing record.[2]

**Ineffective Assistance of Counsel Standard**

To prevail on a claim of ineffective assistance of trial or appellate counsel, a Petitioner must meet the two-part test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). *Strickland*'s two-part test requires a Petitioner to demonstrate that counsel's performance was deficient and "there was a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* However, if a claim fails to satisfy the prejudice component, the court need not make a ruling on the performance component.

**DISCUSSION**

GROUND ONE

Mr. Morris was deprived of his right to a reliable adversarial testing due to ineffective assistance of counsel at the guilt phase of his capital trial in violation of his 5th, 6th, 8th, and 14th Amendment rights under the United States Constitution and his corresponding rights under the Florida Constitution (Dkt. 1 at pgs. 3-8; Dkt. 5 at pgs. 6-12).

In Ground One, Morris first complains that trial counsel was ineffective in failing to

---

[2]The state trial court conducted an evidentiary hearing. Its findings are "presumed to be correct" (28 U.S.C. § 2254(e)(1)) and there is no showing that its decision "was based on an unreasonable determination of the facts. . ." (28 U.S.C. § 2254(d)(2)).

object to the trial court allowing the jurors to ask questions during the trial, and in failing to move to recuse the judge after he allowed jurors to ask questions. In denying this claim, the Florida Supreme Court stated:

> In his first issue on appeal, Morris asserts that trial counsel rendered ineffective assistance during the guilt phase by failing to object to the trial court's decision to permit jurors to ask questions during trial and by failing to move for a mistrial and recusal of the trial judge. Morris contends that trial counsel should have moved for a mistrial because, according to Morris, the applicable rules of procedure and substantive law did not provide for jurors to ask questions during criminal trials. Morris also asserts as a basis for recusal that when the trial judge permitted jurors to ask questions he transcended his role as an impartial trier of fact and assumed the role of prosecutor. We conclude that counsel was not ineffective because there was no error in the procedure by which the trial court permitted jurors to ask questions during trial.

> In *Ferrara v. State*, 101 So. 2d 797 (Fla. 1958), we stated that on appropriate occasions a juror, as a trier of fact, "might be completely justified in propounding a question," and that a procedure that allows jurors to ask questions during trial "should be . . . controlled by the discretion of the trial judge." *Id.* at 801. Relying on *Ferrara* and other precedent, this Court has rejected a claim that the trial court violated the defendant's right to an impartial jury by allowing jurors to submit questions to witnesses during trial. *See Watson v. State*, 651 So. 2d 1159, 1163 (Fla. 1994). Under the procedure approved in *Watson*, the jury members would write down their question and give it to the trial judge, who would then consult with the State and the defense to determine whether the question was proper. *See id.* at 1163 n.6. If it was determined that the question was proper, the trial judge would present the question to the witness for an answer. *See id.* We observed that the practice of questioning by jurors "has been condoned as permissible trial procedure." *Id.* at 1163.

> The procedure we approved in *Watson* is nearly identical to the procedure implemented by the trial judge in this case. As in *Watson*, the jury in this case was instructed that all questions should be submitted in writing and that if it was determined that the questions were appropriate, they would be submitted to the witness for an answer at an appropriate time. Thus, the trial judge did not err in allowing jurors to ask questions during Morris's trial. Since the allegations of ineffectiveness in trial counsel's failure to object, move for a mistrial, and move for recusal are based on the incorrect assumption that the procedure followed by the trial judge was contrary to established law, we conclude that there was no deficient performance. Although our determination that counsel was not deficient

7

obviates the need to address the prejudice prong under *Strickland, see Waterhouse v. State,* 792 So. 2d 1176, 1182 (Fla. 2001), we note that Morris has also failed to show that he was prejudiced by counsel's performance. Morris fails to identify any specific question that was asked and how either the question or its answer undermines confidence in the outcome of his trial. Because neither prong of *Strickland* has been met, we affirm the trial court's denial of relief as to this claim.

*Morris v. State,* 931 So. 2d at 828-29 (footnote omitted).

In *Smith v. Florida,* 269 Fed. Appx. 871, 873 (11th Cir. 2008)(unpublished opinion), the

Eleventh Circuit Court of Appeals stated:

> Under section 2254(d), a federal court may not grant habeas relief on claims that were previously adjudicated in state court unless the adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law . . . or resulted in a decision based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). The Supreme Court has held that a state court decision is "contrary to" established law if: (1) the state arrives at a conclusion opposite to that reached by the Supreme Court on a question of law; or (2) a state court confronts facts "materially indistinguishable" from relevant Supreme Court precedent, but reaches an opposite result. *Williams v. Taylor,* 529 U.S. 362, 405, 120 S. Ct. 1495, 1519, 146 L. Ed. 2d 389 (2000).

> A state court decision is an "unreasonable application" of clearly established law if the state court unreasonably applies controlling law, or unreasonably extends or fails to extend, a legal principle to a new context. *Id.* at 407, 120 S. Ct. at 1520.

Petitioner fails to establish that the Florida Supreme Court's rejection of this claim was

contrary to or an unreasonable application of clearly established federal law. Petitioner has not

referred to, and the Court is not aware of, any cases of the United States Supreme Court holding

that the procedure of allowing jurors to submit questions at a criminal trial constitutes error that

mandates reversal of a defendant's convictions. In fact, many federal courts have held that such a

practice is permissible in certain circumstances in federal criminal trials. *See, e.g., United States

v. Richardson,* 233 F.3d 1285, 1289 (11th Cir. 2000)("[W]e reject outright Richardson's

8

argument that permitting juror questioning of witnesses is per se error."); *United States v. Collins*, 226 F.3d 457, 463 (6th Cir. 2000)("[T]here will be occasions when a district court may determine that the potential benefits to allowing such questions will outweigh the risks."); *United States v. Bush*, 47 F.3d 511, 514 (2d Cir. 1995)(direct questioning by jurors is a "matter within the judge's discretion"); *United States v. Callahan*, 588 F.2d 1078, 1086 (5th Cir. 1979)("There is nothing improper about the practice of allowing occasional questions from jurors to be asked of witnesses.").

Furthermore, Morris' argument that "[p]ermitting the State to clarify, explain, or bolster any weak points in a witnesses [sic] testimony after the testimony was presented would deprive him of a fair adversarial testing of the evidence" (Dkt. 1 at pg. 4) is disingenuous at best. Morris appears to argue that it was fundamentally unfair to let jurors ask questions because he was entitled to have them confused about the evidence. Morris has not established that he is entitled to have the jury confused about the evidence. *See, e.g., Callahan*, 588 F.2d at 1086 ("If a juror is unclear as to a point in the proof, it makes good common sense to allow a question to be asked about it."); *Collins*, 226 F.3d at 462 ("[T]here are benefits to allowing questions by jurors: not only may such questions result in more attentive jurors, but juror questions may advance the search for truth by alleviating uncertainties in the jurors' minds, clearing up confusion, or alerting attorneys to points that bear further elaboration.")(citation omitted).

Finally, the Florida Supreme Court determined that the procedure used by the trial court which allowed the jurors to submit written questions during Morris' trial was appropriate under Florida law. *See Morris v. State*, 931 So. 2d at 829 (citing *Watson v. State*, 651 So. 2d 1159,

1163 (Fla. 1994)).[3] Thus, trial counsels' failure to object to the trial court allowing the jurors to submit written questions during Morris' trial, and failure to move to recuse the trial judge was not deficient performance. Moreover, Petitioner has failed to present any evidence of prejudice resulting from the juror questioning. Consequently, Morris cannot show that the state court's application of *Strickland* was unreasonable.

Morris next complains that trial counsel was ineffective in failing to properly investigate and prepare in the guilt phase of the trial. Specifically, Morris asserts trial counsel was ineffective in failing to properly investigate and prepare for witness Sherry Laventure's testimony.

During his opening statement, Morris' trial counsel told the jury that the day before the murder, a witness observed a person who was not a black man looking around outside the apartment where the victim lived (Dkt. 23, Ex. A-20 at pgs. 1710-11). However, during trial the witness, Sherry Laventure ("Laventure"), testified that the person she saw looking around the victim's apartment "wasn't white." (Dkt. 23, Ex. A-27 at pg. 3040). Defense counsel attempted to impeach Laventure's testimony with a prior conversation he had with her in which she allegedly told him "that the person did not appear to be either Caucasian or African American but appeared to be from the Islands, Puerto Rico or the Islands[.]" (Id. at pg. 3044). In response to defense counsel's question, the witness stated "[a]ll I know is that he wasn't white." (Id.).

During cross-examination, the prosecutor asked the witness "[w]hat color was the skin of

---

[3]Morris' argument that counsel was ineffective in failing to object to the court allowing the jurors to submit written questions because the then proposed procedural rule allowing juror questions was only intended for civil actions (See Dkt. 1 at pg. 4), is frail at best. There doesn't seem to be any constitutional distinction between a civil and criminal trial with respect to letting jurors ask questions.

that person?" (Id. at pg. 3048). The witness answered "[i]t was dark. He wasn't white, that I know." (Id.). The prosecutor then asked "[w]as it light black skin?" (Id.). The witness answered "[y]es." (Id.).

In denying this claim, the Florida Supreme Court stated:

Next, Morris asserts that trial counsel rendered ineffective assistance during the guilt phase by failing to properly investigate and prepare for witness Sherry Laventure's testimony. During opening statements, defense counsel Howard Dimmig explained that the defense's theory was that someone other than Morris committed the murder. He told the jury that Laventure would testify that she witnessed a man who "was definitely not a black man" observing the victim's apartment the day before the murder. Contrary to Dimmig's statements during opening, Laventure testified that on the day before the murder she saw a man observing the victim's apartment who "wasn't white." Laventure also testified that she spoke with a bearded investigator from the public defender's office and that, consistent with her testimony at trial, she told him that the person she saw was not white. Laventure further testified that Toni Maloney, who works with the public defender's office, encouraged her to testify falsely that the person she saw was not black.

> FN11 Laventure testified that she could not remember this investigator's name but that she recalls he had a beard. The State and defense counsel assumed that Laventure was referring to an investigator named Brad Barfield.

Dimmig unsuccessfully attempted to refresh Laventure's recollection by referring to a previous conversation he had with her in which Laventure had stated that the person she saw did not appear to be black. However, because there was no written record of Laventure's pretrial statements, Dimmig could not impeach her testimony. Dimmig proffered his own testimony and that of Maloney that Laventure stated to them before trial that the person she saw observing the victim's apartment on the day before the murder was not black. Dimmig also presented evidence of Morris's whereabouts at the time Laventure recalled seeing someone observing the victim's apartment. To rebut Laventure's testimony that the defense encouraged her to testify falsely, a stipulation was read to the jury that neither trial counsel nor any representative of the public defender's office suggested or encouraged any witness to present false testimony.

Morris contends that had Dimmig deposed Laventure, obtained a prior written statement from Laventure, or called Barfield as a witness, counsel would have

been able to impeach Laventure's testimony at trial. According to Morris, Dimmig was ineffective because Laventure's testimony was damaging to the defense and because the State exploited this testimony in closing arguments.

Trial counsel was not ineffective in deciding not to depose Laventure or obtain a prior written statement from this witness. Laventure was called as a witness to support the defense's alternate suspect theory. Dimmig testified at the evidentiary hearing that he did not depose Laventure because it was not his standard practice to depose his own witness. Dimmig stated that in over twenty years of experience as a public defender, he does not ever recall deposing a defense witness. Based on Laventure's pretrial statements to both him and Maloney, Dimmig testified that he believed he knew what Laventure's testimony would be at trial and was surprised when her testimony changed. Although Dimmig was aware that Laventure was not a willing witness, there is no evidence in the record that he knew or had reason to believe Laventure would testify at trial contrary to her pretrial statements. Under these circumstances, trial counsel was not deficient in failing to depose Laventure or obtain a prior written statement from this witness.

Also, trial counsel was not ineffective in not presenting Barfield to testify concerning his conversations with Laventure regarding the person she observed the day before the murder occurred. "The failure to call witnesses can constitute ineffective assistance of counsel if the witnesses may have been able to cast doubt on the defendant's guilt, and the defendant states in his motion the witnesses' names and the substance of their testimony, and explains how the omission prejudiced the outcome of the trial." *Ford v. State*, 825 So. 2d 358, 360-61 (Fla. 2002) (quoting *Jackson v. State*, 711 So. 2d 1371, 1372 (Fla. 4th DCA 1998)). In this case, Morris failed to demonstrate the substance of Barfield's testimony or that Barfield would have been able to cast doubt on Morris's guilt, as required by *Ford. See* 825 So. 2d at 360.

At trial, Laventure testified that she was unable to recall the name of the investigator she spoke with and would also be unable to identify the investigator if she saw him again. Both the State and the defense assumed Laventure was referring to Barfield since he was an investigator with the public defender's office and had a beard at the time he spoke to Laventure. Because it is not clear from the record if Barfield was in fact the investigator Laventure spoke with, his testimony may not have been useful in impeaching Laventure. Even assuming Barfield was the person that Laventure spoke with, there is no basis in the record to conclude that Laventure told him the person she saw was not black. Barfield was not called as a witness at the evidentiary hearing and there is no record of his conversation with Laventure. Based on these facts, Morris has failed to demonstrate that trial counsel was deficient in failing to call Barfield to testify at trial to impeach Laventure's testimony. *See Spencer v. State*, 842 So. 2d 52, 63 (Fla. 2003)

(rejecting claim that counsel was ineffective for failing to call triage physician to impeach the testimony of treating physician at trial where there was no evidence or testimony from the triage physician directly contradicting the treating physician's testimony at trial).

For the same reason, Morris has failed to establish that he was prejudiced by counsel's performance. Because Barfield did not testify at the evidentiary hearing to establish what testimony he would have offered at the guilt phase of Morris's trial, we cannot determine how Barfield's testimony at trial would have affected the verdict. *Cf. Davis v. State*, 875 So. 2d 359, 369 (Fla. 2003) ("Because [the defendant] did not testify at the evidentiary hearing or otherwise establish what testimony he would have offered, we cannot conclude that our confidence in the outcome is undermined by [the defendant's] failure to testify during the penalty phase.").

Moreover, although Laventure's testimony that the person she saw observing the victim's apartment on the day before the murder occurred "wasn't white" went uncontradicted at trial, this testimony did not conclusively establish that Morris was the person she saw. Immediately following Laventure's testimony, Dimmig called Julie Woodruff to testify that Morris was at work at the time Laventure stated she saw someone observing the victim's apartment. During closing arguments, Dimmig referred to Woodruff's testimony in arguing that Laventure's testimony failed to demonstrate that Morris was the person she saw. We conclude that Morris was not prejudiced by counsel's performance because Laventure's testimony that the person she saw "wasn't white," although inconsistent with counsel's opening statements, supported the defense's theory that someone other than Morris committed the murder when this testimony is considered together with the evidence establishing Morris's whereabouts at the time Laventure witnessed someone observing the victim's apartment. Further, there was substantial evidence pointing to Morris as the perpetrator of this crime. Accordingly, we affirm the denial of relief as to this claim.

*Morris v. State*, 931 So. 2d at 829-31.

Initially, this Court finds that Laventure's testimony that the person she observed "wasn't white" was different than, but not inconsistent with defense counsel's comment during opening statement that the person Laventure observed "definitely was not a black man." (Dkt. 23, Ex. A-20 at pg. 1711). The prior statement Laventure allegedly made to defense counsel was that "the person did not appear to be either Caucasian or African American but appeared to be from the

Islands, Puerto Rico or the Islands[.]" (Dkt. 23, Ex. A-27 at 3044). Therefore, Laventure's testimony at trial that the man she observed "wasn't white" is consistent with her alleged prior statement that the man did not appear to be "Caucasian." Furthermore, during cross-examination, Laventure clarified that the man she saw "wasn't white" but had "light black skin." (Id. at pg. 3048). Consequently, Laventure's trial testimony was not inconsistent with her prior statement to defense counsel that "the person did not appear to be either Caucasian or African American but appeared to be from the Islands, Puerto Rico or the Islands[.]" Morris does not present any evidence that Laventure ever gave a prior statement to defense counsel or any other individual in which she indicated that the man she observed was white. Further, Laventure did not testify at trial that the man she observed was "a black man" or "African American." She testified at trial that the man she observed had "light black skin." Her testimony, therefore, was consistent with her alleged prior statement that the man she saw "appeared to be from the Islands, [or] Puerto Rico." Accordingly, because Morris fails to show that Laventure made a prior statement that was inconsistent with her trial testimony, Morris fails to demonstrate defense counsel's performance was deficient in failing to depose or obtain a sworn statement from Laventure, or in failing to call Investigator Barfield to impeach her testimony.[4]

Furthermore, during the evidentiary hearing on Morris' postconviction motion, defense counsel testified that he believed that he knew what Laventure's testimony would be at trial, and that he "did not want to take a deposition of [Laventure] because then the State would be aware

---

[4]During the state evidentiary hearing on Morris' postconviction motion, Morris did not present the testimony of Investigator Barfield in an attempt to establish that Laventure gave him a statement inconsistent with her trial testimony.

of her..." (Dkt. 23, Ex. B-3 at R. 372).[5] Defense counsel also testified that in over 20 years as a defense attorney, he never had taken the deposition of a defense witness, and that it is not standard practice for either the State or the defense to take depositions of their own witnesses (Id. at R. 371-72). "[C]ounsel will not be deemed unconstitutionally deficient because of tactical decisions." *McNeal v. Wainwright*, 722 F.2d 674, 676 (11th Cir. 1984) (citations omitted). "There is a strong presumption that counsel's performance was reasonable and adequate, with great deference being shown to choices dictated by reasonable strategy." *Michael v. Crosby*, 430 F.3d 1310, 1320 (11th Cir. 2005). "The presumption of reasonableness is even stronger when we are reviewing the performance of an experienced trial counsel." *Id.* (quoting *Callahan v. Campbell*, 427 F.3d 897, 933 (11th Cir. 2005)).

At the time of Morris' trial, Mr. Dimmig was an experienced defense attorney (Dkt. 23, Ex. B-3 at R. 371). It was not his practice to take the deposition of his own witnesses, and he determined that he did not want to take Laventure's deposition because he believed he knew what her testimony would be at trial, and "because then the State would be aware of her." (Id. at R. 371-72). To overcome the presumption that defense counsel's performance was reasonable, Morris "must establish that no competent counsel would have taken the action that his counsel did take." *Chandler v. United States*, 218 F.3d 1305, 1315 (11th Cir. 2000) (en banc) (footnote and citation omitted). Morris fails to meet his burden.

Finally, this Court agrees with the Florida Supreme Court's determination that Morris

---

[5]In Florida, a defendant who elects to participate in discovery in a criminal case, including taking the deposition of any witness, is required to provide reciprocal discovery to the state. See Fla. R. Crim. P. Rule 3.220. Moreover, witness statements are not discoverable unless they are written or recorded. See Fla. R. Crim. P. Rule 3.220(b)(1)(B); *Olson v. State*, 705 So. 2d 687, 691 (Fla. 5th DCA 1998).

failed to establish prejudice as a result of defense counsel not deposing or obtaining a sworn statement from Laventure, and not calling Investigator Barfield to testify.[6] Morris wholly fails to establish the substance of Barfield's testimony, and how it would have aided him. Furthermore, Julie Woodruff's testimony established that Morris was at work at the time Laventure stated she saw a man observing the victim's apartment (Dkt. 23, Ex. A-27 at R. 3052-58).[7]

On this record, this Court cannot say that the Florida Supreme Court's finding that defense counsel's failure to depose Laventure or call Investigator Barfield to testify was not ineffective assistance of counsel, was contrary to or an unreasonable application of *Strickland*. Accordingly, Ground One does not warrant federal habeas relief.

GROUND TWO

Mr. Morris was denied the effective assistance of counsel where trial counsel held discussions with the court outside of the presence of Mr. Morris and without a waiver in violation of Mr. Morris's rights under the 5th, 6th, 8th, and 14th Amendment rights under the United States Constitution (Dkt. 1 at pgs. 8-10; Dkt. 5 at pgs. 12-16).

In Ground Two, Morris complains that defense counsel were ineffective in participating in a bench conference without obtaining a waiver of his presence.[8] Morris argues that he has a constitutional right to be present at every stage of his trial, and that defense counsels' waiver of

---

[6]Defense counsel himself admitted that Laventure's testimony at trial regarding her observation of the man looking at the victim's apartment the day before the murder was "entirely favorable to the defense" because she saw the man "at a time when...Morris could not have been there." (Dkt. 23, Ex. A-27 at R. 3076-77).

[7]Laventure testified she saw the man on September 1, 1994, at approximately 2:00-2:30 p.m. (Dkt. 23, Ex. A27 at R. 3038-39). Woodruff testified that time records revealed Morris was at work at Taco Bell on September 1, 1994, from 2:00 p.m until 5:30 p.m. (Id. at R. 3055).

[8]Morris asserts an ineffective assistance of counsel claim. He does not assert a substantive Sixth Amendment Confrontation Clause or Fourteenth Amendment due process claim. To the extent Morris is attempting to assert a substantive Sixth or Fourteenth Amendment claim, the claim is unexhausted and procedurally barred since the Florida Supreme Court determined that the substantive claim was procedurally barred because Morris did not present the claim to the Florida Supreme Court on direct appeal of his conviction. *See Morris v. State*, 931 So. 2d at 832 n.12.

his right to be present during a bench conference was ineffective assistance of counsel.

Morris raised his ineffective assistance of counsel claim in his postconviction motion. In denying the claim, the Florida Supreme Court stated:

> We next turn to the allegations of penalty phase ineffectiveness. Morris asserts that trial counsel was ineffective during the penalty phase in holding discussions with the trial court outside of his presence and without a waiver from him. "A defendant has a constitutional right to be present at all 'crucial stages of his trial where his absence might frustrate the fairness of the proceedings.'" *Orme v. State*, 896 So. 2d 725, 738 (Fla. 2005) (quoting *Garcia v. State*, 492 So. 2d 360 (Fla. 1986)). However, this right "does not confer upon the defendant the right to be present at every conference at which a matter pertinent to the case is discussed, or even at every conference with the trial judge at which a matter relative to the case is discussed." *Orme*, 896 So. 2d at 738 (quoting *United States v. Vasquez*, 732 F.2d 846, 848 (11th Cir. 1984)). Accordingly, this constitutional right "does not extend to bench conferences involving purely legal matters" because a defendant's presence at such conferences "would be of no assistance to counsel." *Rutherford v. Moore*, 774 So. 2d 637, 647 (Fla. 2000); *see also Hardwick v. Dugger*, 648 So. 2d 100, 105 (Fla. 1994) ("[A] defendant has no constitutional right to be present at the bench during conferences that involve purely legal matters.").
>
> In this case, Morris cannot meet the prejudice prong of *Strickland*. We have repeatedly rejected claims of ineffective assistance resulting from a defendant's absence during a bench conference when the defendant has failed to show that anything was discussed at the conference that required the defendant's consultation. *See, e.g., Orme*, 896 So. 2d at 738 (concluding that defendant failed to demonstrate prejudice from his absence because he "has not shown that anything discussed during the bench conferences required his consultation"); *Vining v. State*, 827 So. 2d 201, 218 (Fla. 2002) (determining that defendant "has not shown that any matter discussed during these bench conferences required his consultation nor has he demonstrated any prejudice from his absence"); *Hardwick*, 648 So. 2d at 105 (concluding ineffective assistance claim was meritless because defendant "has not shown nor attempted to show that any matter was determined at these conferences that required his consultation"). In this case, even if trial counsel was deficient in holding a bench conference with the trial judge outside of Morris's presence and without a waiver by him, Morris has not established that anything was discussed during this conference that required his consultation. Nor has he established that the conference involved anything but purely legal matters to which his constitutional right to be present does not extend. Thus, we conclude that Morris has failed to demonstrate under *Strickland* that he was prejudiced by counsel's conduct. Accordingly, we affirm the denial of relief as to this claim.

*Morris v. State*, 931 So. 2d at 831-32 (footnote omitted).

To establish a prima facie claim of ineffective assistance of counsel, Petitioner must show that counsel's performance was deficient and that the deficient performance prejudiced the defense. *Strickland*, 466 U.S. at 687. Prejudice results when there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.

Even assuming trial counsels' performance was deficient in holding a discussion with the trial court outside of Morris' presence, this Court would be precluded from granting Morris the relief he seeks. The United States Supreme Court has held that "a defendant is guaranteed the right to be present at any stage of the criminal proceeding that is critical to its outcome if his presence would contribute to the fairness of the procedure." *Kentucky v. Stincer*, 482 U.S. 730, 745 (1987). The exclusion of Morris from the bench conference could have violated *Stincer* if Morris' presence would have contributed to the fairness of the proceedings, but as the Eleventh Circuit held in addressing a defendant's absence, under *Strickland*, Morris must prove more to establish that he is entitled to habeas relief on an ineffective assistance of counsel claim. *See Diaz v. Crosby*, 402 F.3d 1136, 1142-43 (11th Cir. 2005). When the standards of *Strickland* are applied to ineffective assistance of counsel claims, those claims will fail if the petitioner cannot establish either of *Strickland's* two grounds. *See Sims v. Singletary*, 155 F.3d 1297, 1305 (11th Cir. 1998). To secure relief in this habeas proceeding, Morris must demonstrate that trial counsel's performance was deficient *and* that he suffered prejudice as a result of the deficient performance. Morris has not explained how his presence at the bench conference would have contributed to the fairness of his trial.

During the evidentiary hearing on Morris' postconviction motion, defense counsel testified that she did not have any recollection as to the substance of her conversation during the bench conference which took place off the record and outside of Morris' presence (Dkt. 23, Ex. B-3 at R. 399-400). She also testified that she knew she could not exclude Morris from a discussion with the court which he had a right to attend, and that she did not believe she would have done so (Id. at R. 406-407). Morris does not assert, much less provide clear and convincing evidence, that anything was discussed during the bench conference that required his presence or consultation.

Morris bears the burden of establishing that his counsel was ineffective. *See Strickland*, 466 U.S. at 687; *Johnson v. Alabama*, 256 F.3d 1156, 1176 (11th Cir. 2001) ("The petitioner bears the burden of proof on the 'performance' prong as well as the 'prejudice' prong of a *Strickland* claim, and both prongs must be proved to prevail."). The Court finds that Morris fails to demonstrate how he was prejudiced by his absence from the bench conference. His speculation about what might have been discussed during the bench conference is not sufficient to establish ineffective assistance of counsel. *See Hollis v. Smith*, 134 Fed.Appx. 364, 367 (11th Cir. 2005).

The Court finds that Morris has failed to establish that the Florida Supreme Court's finding that he failed to meet the *Strickland* test is contrary to or an unreasonable application of clearly established Federal law or resulted in a decision that is based on an unreasonable determination of the facts in light of the evidence presented. Having failed to make the necessary showing, Morris has not demonstrated that he is entitled to federal habeas relief on this claim.

GROUND THREE

The trial court erred in denying Mr. Morris's claim that counsel was ineffective for failing to

advise Mr. Morris that he could testify in his own behalf in the penalty phase of his trial thus denying him of his rights under the 5th, 6th, 8th and 14th Amendments of the United States Constitution (Dkt. 1 at pgs. 10-12; Dkt. 5 at pgs. 17-20).

Morris testified during the guilt phase of the trial, but did not testify during the penalty phase of the trial. He alleges that the trial record does not show that he knowingly, intelligently, and voluntarily waived his right to testify at the penalty phase of the trial. He claims that trial counsel was ineffective in failing to advise him that he could testify in his own behalf in the penalty phase of the trial.

Davis raised this claim in his state 3.851 postconviction motion. The state trial court denied the claim (Dkt. 23, Ex. B-5 at R. 796-97). In affirming the denial of the claim, the Florida Supreme Court stated:

> Morris also asserts that trial counsel was ineffective during the penalty phase in failing to inform him of his right to testify. Morris asserts that although he testified in the guilt phase, neither the trial judge nor trial counsel explained to him that he could testify in the penalty phase. Morris contends that by failing to advise him of his right to testify, trial counsel unilaterally waived Morris's right guaranteed by the Sixth Amendment to the United States Constitution.
>
> A criminal defendant's right to testify is a fundamental right under both the Florida and United States Constitutions. *See Deaton v. Dugger*, 635 So. 2d 4, 8 (Fla. 1993). "This right is personal to the defendant and cannot be waived either by the trial court or by defense counsel." *United States v. Teague*, 953 F.2d 1525, 1532 (11th Cir. 1992). In order to waive this right, a defendant must make a knowing, voluntary, and intelligent waiver. *See Deaton*, 635 So. 2d at 8. However, the right to testify does not "fall within the category of fundamental rights which must be waived on the record by the defendant himself." *Torres-Arboledo v. State*, 524 So. 2d 403, 410-11 (Fla. 1988); *see also Davis*, 875 So. 2d at 368.
>
> This Court has determined that the trial court is not obligated to specifically inform the defendant of the right to testify at trial. *See Occhicone v. State*, 570 So. 2d 902, 905 (Fla. 1990); *Torres-Arboledo*, 524 So. 2d at 411 n.2. Unlike the trial court, defense counsel does have an obligation to inform the defendant of his or her right to testify. In order to establish a claim of ineffective assistance based upon trial counsel's failure to inform a defendant of the right to testify, both the

deficiency and prejudice prongs of *Strickland* must be satisfied. *See Monlyn v. State*, 894 So. 2d 832, 837 (Fla. 2004) (requiring defendant claiming ineffective assistance from failure to advise him of right to testify to satisfy both prongs of *Strickland*); *Oisorio v. State*, 676 So. 2d 1363, 1364-65 (Fla. 1996) (same).

In *Teague*, the Eleventh Circuit Court of Appeals elaborated on the importance of trial counsel's obligation to inform the defendant of his or her right to testify:

> Defense counsel bears the primary responsibility for advising the defendant of his right to testify or not to testify, the strategic implications of each choice, and that it is ultimately for the defendant himself to decide. This advice is crucial because there can be no effective waiver of a fundamental constitutional right unless there is an "intentional relinquishment or abandonment of a known right or privilege." *Johnson v. Zerbst*, 304 U.S. 458, 464, 58 S. Ct. 1019, 82 L. Ed. 1461 (1938) (emphasis added). Moreover, if counsel believes that it would be unwise for the defendant to testify, counsel may, and indeed should, advise the client in the strongest possible terms not to testify. The defendant can then make the choice of whether to take the stand with the advice of competent counsel.

953 F.2d at 1533 (footnotes omitted) (parallel citations omitted). The Eleventh Circuit further explained that

> [w]here the defendant claims a violation of his right to testify by defense counsel, the essence of the claim is that the action or inaction of the attorney deprived the defendant of the ability to choose whether or not to testify in his own behalf. In other words, by not protecting the defendant's right to testify, defense counsel's performance fell below the constitutional minimum, thereby violating the first prong of the *Strickland* test. For example, . . . if defense counsel never informed the defendant of the right to testify, and that the ultimate decision belongs to the defendant, counsel would have neglected the vital professional responsibility of ensuring that the defendant's right to testify is protected and that any waiver of that right is knowing and voluntary. Under such circumstances, defense counsel has not acted "'within the range of competence demanded of attorneys in criminal cases,'" and the defendant clearly has not received reasonably effective assistance of counsel. *See Strickland*, 466 U.S. at 687 (quoting *McMann v. Richardson*, 397 U.S. 759, 770-71, 90 S. Ct. 1441, 25 L. Ed. 2d 763 (1970)).

*Teague*, 953 F.2d at 1534 (parallel citations omitted).

During the evidentiary hearing on this claim, trial counsel Dimmig and Howardene Garrett testified that they had pretrial discussions with Morris concerning whether he would testify at trial. Dimmig testified that during these discussions he advised Morris of his right to testify but that he was unsure whether Morris understood that this meant he had a right to testify at both the guilt and penalty phases. Garrett was unable to recall whether she discussed with Morris his right to testify at the penalty phase of his trial. Morris testified at the evidentiary hearing that although he recalled Garrett asking him whether he wanted to testify during the guilt phase, neither Garrett nor Dimmig advised him of his right to testify in both phases of his trial.

We need not determine whether there was deficient performance because we conclude that any failure to advise Morris that he had the right to testify during the penalty phase does not undermine our confidence in the death sentence and thus did not prejudice Morris. During the penalty phase, Garrett presented the testimony of twelve witnesses who collectively testified as to the circumstances of Morris's upbringing, including that Morris's mother was young when Morris was born and that she used drugs and made him steal. There was also testimony concerning the physical and psychological abuse Morris suffered and witnessed as a child. Further, these witnesses testified regarding Morris's educational background, his abuse of drugs, and the role he has played in his family's life as an adult. In addition to these witnesses, Garrett presented the testimony of Dr. Dee who testified regarding Morris's childhood and how it affected him, Morris's abuse of drugs, his diagnosis as having an ulcer as a youth, and his IQ level.

At the evidentiary hearing, Morris did not dispute the testimony of any of these witnesses or offer any other evidence beyond that presented during the penalty phase. When asked what his testimony would have been had he testified at the penalty phase, Morris responded, "I would have answered whatever questions they asked me." Morris stated that he would have also testified as to his upbringing, how he felt when his mother made him steal, and how he came to be diagnosed with ulcers. Morris further stated that he would have reaffirmed his innocence.

It is questionable whether the jury would have found Morris's testimony credible, especially as to his protestations of innocence. Garrett testified at the evidentiary hearing that she considered the fact that the jury did not believe Morris's guilt-phase testimony in determining not to call him to testify in the penalty phase. Based on Morris's diminished credibility and the fact that his testimony would have been cumulative to the extensive mitigation evidence presented at the penalty phase, we conclude that any failure by trial counsel to inform Morris of his right to testify in the penalty phase does not undermine this Court's confidence

in the outcome of the trial. Accordingly, we affirm the denial of relief as to this claim.

*Morris v. State*, 931 So. 2d at 832-34.

A criminal defendant has a fundamental constitutional right to testify on his own behalf at trial, a right that cannot be waived by defense counsel. *United States v. Teague*, 953 F.2d 1525, 1532 (11th Cir. 1992) (en banc). "Defense counsel bears the primary responsibility for advising the defendant of his right to testify or not to testify, the strategic implications of each choice, and that it is ultimately for the defendant himself to decide. This advice is crucial because there can be no effective waiver of a fundamental constitutional right unless there is an 'intentional relinquishment or abandonment of a known right or privilege.' *Johnson v. Zerbst*, 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938) (emphasis added)." *Id.* at 1533 (footnote omitted). The appropriate vehicle for claims that a defense counsel's acts led to a violation of this right is an ineffective assistance of counsel claim. *Id.* at 1534. Where defense counsel has not informed the defendant of his right to testify, defense counsel "has not acted within the range of competence demanded of attorneys in criminal cases." *Gallego v. United States*, 174 F. 3d 1196, 1197 (11th Cir. 1999) (citations and internal quotations omitted).

Since there is no affirmative evidence in the record that Morris' attorneys discussed with him his right to testify during the penalty phase of the trial, this Court will assume deficient performance. *Strickland*, however, requires proof of *both* deficient performance and consequent prejudice. *Strickland v. Washington*, 466 U.S. at 697 ("There is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one."); *Sims v. Singletary*, 155 F.3d at 1305 ("When applying

*Strickland*, we are free to dispose of ineffectiveness claims on either of its two grounds."). Morris' claim fails because he fails to show prejudice. To prove prejudice, Morris must show that there is a reasonable probability that the outcome of the penalty phase of the trial would have been different but for counsels' unprofessional errors. *Strickland*, 466 U.S. at 694.

In his petition, Morris essentially avers that he could have testified regarding his childhood and explained to the jury his feelings of frustration at not being able to prevent the rape of his four year old sister. He also asserts that he could have described the abuse he and his family suffered at the hands of his mother's boyfriend, and how his mother forced him to shoplift. Finally, he asserts that he could have clarified his vocational training, detailed his head injury, and further described "with halting eloquence the numerous factors in his background that would mitigate against the imposition of the sentence of death." (Dkt. 1 at pgs. 11-12).

During the penalty phase, Morris' attorneys presented extensive mitigating evidence on his behalf, including testimony from twelve witnesses (Dkt. 23, Exs. A-31 at pgs. 3922-49; A-32 at pgs. 3950-4139; A-33 at pgs. 4140-4328; A-34 at pgs. 4329-4436). Morris' mother and sister testified regarding the rape of his sister (Id. at Ex. A-32 at pgs. 3960, 4078-79). Morris' sister testified how angry and upset Morris was about the incident (Id. at pg. 4079). Morris' mother and sister also testified how Morris' mother's boyfriend beat their mother and Morris all the time, and made the children watch him beat their mother (Id. at pgs. 3969-70, 4080-81). Morris' other sister testified how the children saw the boyfriend beat their mother with a wire hanger and threaten her with a weapon (Id. at pgs. 4101-02).

Morris' mother testified how Morris would steal as a child, and that they were both arrested together for shoplifting (Id. at pgs. 4003-06). Morris' mother's friend testified that

24

Morris' mother encouraged Morris to steal for her (Id. at pgs. 4187-88).

Morris also presented the testimony of Dr. Dee, a clinical psychologist and neuropsychologist. Dr. Dee testified that as a child, Morris witnessed and experienced "savage" abuse (Id. at pg. 4314). He testified how Morris would steal as a child to obtain his mother's approval (Id. at 4315). Dr. Dee testified extensively as to the impact the abuse and events Morris experienced in his childhood had on Morris (Id. at pgs. 4317-33).

Morris' proposed testimony, in light of both parties' evidence, does not demonstrate a reasonable probability that his sentence would have been different had he testified during the penalty phase of the trial. *See Strickland*, 466 U.S. at 695 ("When a defendant challenges a death sentence such as the one at issue in this case, the question is whether there is a reasonable probability that, absent the errors, the sentencer -- including an appellate court, to the extent it independently reweighs the evidence -- would have concluded that the balance of aggravating and mitigating circumstances did not warrant death."). This Court agrees with the Florida Supreme Court's determination that Morris' proposed testimony would have essentially been nothing more than cumulative to the other witnesses' testimony. Moreover, to the extent Morris would have reasserted his innocence of the crimes, the jury clearly did not believe Morris because they already had found him guilty beyond a reasonable doubt. Morris offers no reason to believe that his testimony would have dissuaded the jury from imposing the death penalty. *See, e.g., United States v. Tavares*, 100 F.3d 995, 998, (D.C.Cir.1996) (where the record establishes no reasonable probability that the defendant's asserted testimony would have changed the outcome of the trial, the defendant has failed to make a showing of prejudice).

To the extent Morris is claiming that counsel was ineffective in failing to call him to

testify during the penalty phase of the trial, counsel cannot be found ineffective for failing to present cumulative evidence. *See Marquard v. Sec'y for the Dep't of Corr.*, 429 F.3d 1278, 1308-1309 (11th Cir. 2005) ("A petitioner cannot establish ineffective assistance by identifying additional evidence that could have been presented when that evidence is merely cumulative.") (quoting *Van Poyck v. Florida Dep't. of Corr.*, 290 F.3d 1318, 1324 n.7 (11th Cir. 2002)); *Glock v. Moore*, 195 F.3d 625, 636 (11th Cir. 1999) (finding that, "where much of the new evidence that [petitioner] presents is merely repetitive and cumulative to that which was presented at trial," petitioner could not show prejudice), *cert. denied*, 531 U.S. 890 (2000).

Finally, to the extent Morris argues that the trial court was required to obtain an on-the-record waiver of his right to testify in the penalty phase of the trial (Dkt. 5 at pg. 18), the claim has no merit. The Eleventh Circuit has rejected the argument that "whenever a criminal defendant does not testify at trial there is a per se requirement that the district court advise the defendant of his right to testify and conduct an on-the-record inquiry into whether a non-testifying defendant knowingly, voluntarily, and intelligently waived the right to testify." *United States v. Van De Walker*, 141 F.3d 1451, 1452 (11th Cir. 1998).

The record supports the findings of fact of the Florida Supreme Court, and these findings are entitled to deference from this Court unless Morris can show the facts to be clearly erroneous. *See Panzavecchia v. Wainwright*, 658 F.2d 337, 339 (5th Cir. Unit B 1981) (under § 2254(d), "factual issues resolved by state courts are presumed correct and may not be set aside unless clearly erroneous"). Morris fails his burden of showing the facts to be clearly erroneous, and that the Florida Supreme Court's denial of this claim is an unreasonable application of controlling Supreme Court precedent. Accordingly, he is not entitled to relief pursuant to Ground Three.

26

## GROUND FOUR

The lower court erred in denying the claim that counsel was ineffective for failure to request the court instruct the jury on statutory mitigators where evidence of statutory mitigation was presented in the penalty phase of the trial. The denial of the claim violated Mr. Morris's rights under the 6th, 8th, and 14th Amendments of the United States Constitution (Dkt. 1 at pgs. 13-18; Dkt. 5 at pgs. 20-23).

In Ground Four, Morris complains trial counsel were ineffective in failing to request a jury instruction on two statutory mitigating circumstances: 1) that the murder was committed while Morris was under the influence of extreme mental or emotional disturbance; and 2) that Morris' capacity to conform his conduct to the requirements of law was substantially impaired. Morris raised this claim in state court in his postconviction motion. The trial court denied the claim as follows:

> As to claim IX, Ms. Garrett testified that there was some concern that if she asked for statutory mitigation the State would be allowed to inquire into the facts. Facts that potentially included issues Mr. Dimmig had successfully kept out during the guilt phase. She testified that she made a strategic choice to list all the mitigation factors without reference to statutory or non-statutory mitigation.
>
> Here, trial counsel's testimony substantiated each of the alleged errors or omissions as defense tactics. Thus, the Defendant is unable to overcome "the presumption that under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland*, 466 U.S. at 689. Claim IX is denied.

(Dkt. 23, Ex. B-5 at R. 798).

In affirming the denial of this claim, the Florida Supreme Court stated:

> As to his next issue on appeal, Morris asserts that trial counsel rendered ineffective assistance during the penalty phase by failing to request that the jury be instructed on two statutory mitigating circumstances--that the murder was committed while he was under the influence of extreme mental or emotional disturbance, see § 921.141 (6)(b), Fla. Stat. (1999), and that his capacity to conform his conduct to the requirements of law was substantially impaired. See § 921.141(6)(e), Fla. Stat. (1999). Morris contends that counsel's conduct prejudiced him because the trial judge found one of these statutory mitigating factors,

substantially impaired capacity, based on Dr. Dee's testimony at the *Spencer* hearing. We point out that Morris is not attacking the wisdom of trial counsel's presentation of mitigating evidence but only whether jury instructions should have been requested. To address his claim, we must determine whether there was evidence presented to the jury that would have supported the requested jury instructions.

This Court recently rejected a claim of penalty-phase ineffectiveness in counsel's failure to request instructions on the same two statutory mitigators at issue here. *See Cole v. State*, 841 So. 2d 409 (Fla. 2003). In *Cole*, we affirmed the trial court's conclusion that counsel was not ineffective because the psychologist did not render an opinion during the penalty phase concerning whether the two statutory mitigators applied to the murder for which the defendant was on trial. *See id.* at 420.

The reasoning of *Cole* applies here. In this case, Dr. Dee testified at trial that he met with Morris eight times and that in addition to interviewing Morris, he also interviewed several of Morris's family members. Dr. Dee testified that he reviewed all relevant records, including medical records and school records, and that he administered the revised version of the Wechsler Adult Intelligence Scale test. Based on Dr. Dee's testimony, Morris's performance on this test was 82, which fell in "the low end of the low average range at the 12th percentile." In other words, Morris scored above twelve percent of the general adult population but below approximately eighty-eight percent of this population. Dr. Dee characterized Morris's IQ level as borderline to dull normal. Dr. Dee explained that persons with this IQ level process information and make decisions slower than other individuals and that their decision-making is less useful and less accurate. Dr. Dee opined that Morris's school records suggest that Morris had attention deficit hyperactivity disorder (ADHD) as a child. However, Dr. Dee stated that although Morris was placed in educable mentally retarded classes, he was not mentally retarded as that term is used by clinicians. Dr. Dee noted that Morris was an alcoholic but had ceased this activity when he developed an ulcer in his teenage years. Finally, Dr. Dee testified that after Morris stopped drinking alcohol, he began abusing various controlled substances, including marijuana, powdered cocaine, free base cocaine, and rock cocaine.

**Although Dr. Dee discussed at trial how Morris's background affected him as a child, Dr. Dee did not discuss whether Morris's IQ level, ADHD, or drug abuse affected him as an adult. More importantly, Dr. Dee did not render an opinion at trial as to whether either of these factors was likely to have affected Morris at the time he committed the murder in this case. Dr. Dee testified at trial that when he discussed Morris's decision-making and information processing skills on direct examination, he was trying to**

demonstrate the practical effect of Morris's IQ level on his everyday life and was not rendering an opinion as to Morris's decision to commit the murder in this case or his ability to make a decision to commit a crime generally. Thus, there was no evidence presented to the jury during the penalty phase that Morris's IQ level, ADHD, or drug abuse affected his behavior before or during the time that he committed the murder. Nor was there any evidence presented to the jury at the penalty phase that Morris had any brain damage. As a result, the jury did not hear any evidence to support a finding that either statutory mitigator existed.

Rather, Dr. Dee testified at the *Spencer* hearing that he found evidence of frontal lobe damage, which is associated with increased impulsivity and an inability to control one's behavior. Dr. Dee stated that Morris's use of drugs tends to exacerbate his brain damage and that Morris's capacity to appreciate the criminality of his conduct or to conform his conduct to the requirements of law was substantially impaired at the time the offense was committed. Dr. Dee did not testify either to the jury in the penalty phase or in the *Spencer* hearing concerning whether Morris was under the influence of extreme mental or emotional disturbance at the time of the offense. Because no testimony as to either statutory mitigator was presented to the jury during the penalty phase, if counsel had requested an instruction on these mitigating circumstances it likely would have been denied by the trial court. Therefore, we conclude that trial counsel was not deficient in failing to request jury instructions on statutory mitigation. *See Cole*, 841 So. 2d at 420-21 (rejecting ineffective assistance claim of failure to request jury instruction on statutory mitigators where there was no evidence presented at trial to support the mitigators). Accordingly, we affirm the denial of relief as to this claim.

*Morris v. State*, 931 So. 2d at 834-36 (footnote omitted)(emphasis added).

The Florida Supreme Court found that Dr. Dee did not present any evidence during the penalty phase of the trial that Morris committed the murder while he was under the influence of extreme mental or emotional disturbance, or that his capacity to conform his conduct to the requirements of law was substantially impaired.[9] Therefore, the Florida Supreme Court

---

[9]The Supreme Court found that Dr. Dee did present evidence during the *Spencer* hearing that because of Morris' brain damage, his capacity to appreciate the criminality of his conduct or to conform his conduct to the requirements of law was substantially impaired at the time the offense was committed. *Morris v. State*, 931 So. 2d at 836.

concluded that trial counsel were not ineffective in failing to request a jury instruction on the two statutory mitigators because there was no evidence presented at trial that supported the mitigators.

Initially, it is apparent from the record that it was defense counsels' plan to do whatever they could to prevent the jury from hearing that the victim had been sexually assaulted either before or after she died (Dkt. 23, Ex. B-3 at R. 417). It is apparent from defense counsel's testimony during the evidentiary hearing on Morris' post-conviction motion that she was concerned that presenting mental health mitigation evidence would risk opening the door to the admission of more damaging information (Id. at R. 412-17). Dr. Dee testified during the evidentiary hearing that he recalled defense counsel made a strategic decision not to go into mental health mitigation (Id. at R. 447). He also testified that in his experience as an expert witness in capital cases, when he testifies regarding mental health mitigation evidence, the State often uses that evidence to its advantage and makes what is a statutory mitigator into an aggravating circumstance in the eyes of the jury (Id. at R. 449-50). Therefore, defense counsel made a reasonable strategic decision not to present mental health mitigation testimony and evidence during the penalty phase of the trial. *See e.g., Stevens v. Zant*, 968 F.2d 1076, 1083 (11th Cir. 1992) (concluding that trial counsel was not unreasonable in deciding not to present mental health testimony at sentencing where counsel believed the potential harm from cross-examination outweighed any benefits of the expert's testimony).

Likewise, the record reveals that defense counsel made a tactical decision to attempt to have the court give a special instruction which lumped all the mitigators together, without referring to whether the mitigators were statutory or non-statutory, instead of requesting jury

instructions on specific statutory mitigators (Id. at R. 396-97; 415-16). Morris fails to show that this tactical decision was unreasonable.

Morris argues that even if defense counsel had a reasonable strategic reason for requesting a special jury instruction lumping all the mitigating factors together, counsel was ineffective in failing to request an instruction on statutory mitigation after the trial court denied defense counsel's request for the special jury instruction (Dkt. 5 at pgs. 21-22). As discussed, however, the Florida Supreme Court found defense counsel were not deficient in failing to request jury instructions on the two statutory mitigators because there was no evidence presented to the jury during the penalty phase of the trial that supported those statutory mitigators. *Morris v. State*, 931 So. 2d at 836. *See also Evans v. State*, 946 So. 2d 1, 14 (Fla. 2006)(In regard to statutory mental health mitigators, evidence of the defendant's probable mental state at the time of the murder or evidence of a pervasive mental condition that affected the defendant every day is required.)(citations omitted).

Morris has not met his burden to show by clear and convincing evidence that the Florida Supreme Court's factual finding that there was no evidence presented to the jury at trial supporting the statutory mitigators was an unreasonable determination of the facts. *See* 28 U.S.C. § 2254(e)(1); *Callahan v. Campbell*, 427 F.3d 897, 926 (11th Cir. 2005)("Not only must the factual determination have been unreasonable, but the state court's factual findings must be shown unreasonable by clear and convincing evidence."). Because there was no evidence presented to the jury that supported the statutory mitigators, defense counsel were not deficient in failing to request instructions on the statutory mitigators. *See Evans*, 946 So. 2d at 14 ("[C]ounsel cannot be deemed deficient for failing to request an instruction on a mitigator that would have

31

been inconsistent with the evidence and testimony presented by the defendant.") (internal quotation omitted).

Morris has not established that the Florida Supreme Court's denial of this claim is an unreasonable application of *Strickland* or an unreasonable determination of the facts. Accordingly, he is not entitled to relief pursuant to Ground Four.

GROUND FIVE

The trial court erred in excluding the proffered testimony of defense witness Toni Maloney. The exclusion of testimony of the defense witness denied Mr. Morris his rights under the 5th, 6th, 8th, and 14th Amendments to the United States Constitution (Dkt. 1 at pgs. 18-29; Dkt. 5 at pgs. 23-26).

In Ground Five, Morris complains that his federal constitutional rights were violated when the trial court excluded the testimony of defense witness Toni Maloney.[10] During the guilt phase of the trial, defense witness Laventure testified that Toni Maloney told her that all she had to do is go to court and testify that the man she saw looking around the outside of the victim's apartment the day before the murder was not black (Dkt. 23, Ex. A-27 at R. 3050). Defense counsel subsequently informed the trial court that the defense intended to call Toni Maloney to rebut Laventure's testimony that she told Laventure how to testify (Id. at R. 3066-67). The trial court did not allow Toni Maloney to testify (Id. at R. 3084-85). The trial court did, however, agree to read a stipulation, drafted by the prosecutor and defense counsel, to the jury which stated "[t]he parties stipulate and agree that no attorney representing the defendant, nor any representative of the public defender's office, has suggested or encouraged any witness to present false testimony." (Id. at R. 3084).

---

[10]Toni Maloney was an employee of the Public Defender's Office who was asked to serve a witness subpoena on Laventure (Dkt. 23, Ex. A-23 at R. 3211-12).

Initially, the Court agrees with Respondent that the federal constitutional claim Morris raises in Ground Five is procedurally barred (See Dkt. 14 at pgs. 95-102). When Morris raised this issue on direct appeal, he argued only that the trial court erred under state law in failing to allow Toni Maloney to testify (Dkt. 23, Ex. A-39 at Initial Brief pgs. 39-53). He did not argue on direct appeal that the failure to allow Toni Maloney to testify also violated his federal constitutional rights (Id.). Therefore, the federal constitutional dimension of this claim has been waived and is procedurally barred here. *Sullivan v. Wainwright*, 695 F.2d 1306 (11th Cir. 1983).

Even if state law bears some relation to federal constitutional requirements, *Luton v. Grandison*, 44 F.3d 626, 628 (8th Cir. 1994), *cert. denied*, 513 U.S. 1195 (1995), the presentation of the claim in state law terms is insufficient to support a finding that the state courts have had a fair opportunity to address the constitutional claim. *Duncan v. Henry*, 513 U.S. 364 (1995). A claim that is unexhausted in state court is not reviewable by this Court unless the Petitioner can show cause for the default and actual prejudice, *Wainwright v. Sykes*, 433 U.S. 72 (1977), or by establishing the kind of fundamental miscarriage of justice occasioned by constitutional violation that resulted in the conviction of a defendant who was "actually innocent." *Murray v. Carrier*, 477 U.S. 478 (1986). Morris has not presented cause to excuse his default or established his actual innocence, and therefore he is procedurally barred from raising this claim here.

Even if Morris' claim was not procedurally barred, it would fail on the merits. In denying the claim, the Florida Supreme Court stated:

> Morris argues that the trial court erred in excluding the proffered testimony of defense witness, Toni Maloney. In his opening statement, Morris told the jury that Sherry Laventure, a neighbor of the victim, would testify that on the day before

the victim's body was discovered, Laventure saw a man walking around the victim's apartment looking at the windows and doors. Morris then asserted that Laventure would confirm that the man she saw was definitely not a black man, and therefore could not have been Morris. However, when Morris sought to elicit this testimony on direct examination, Laventure instead testified that the man she saw was not white. On cross-examination, the prosecutor followed up on this testimony:

> Q: Were you ever told by anyone that all you have to do is come to this court room and say that the person was not black?
>
> A: Yes.
>
> Q: Who made that statement to you ma'am?
>
> A: The defense side.
>
> Q: Do you remember--do you have a name with that person?
>
> A: I think it was Maloney. It was a lady.
>
> Q: Would the name Toni Maloney ring any bells?
>
> A: Yes.

Morris did not object to this line of questioning at the time, but Morris subsequently advised the trial court that he intended to call Maloney to "rebut" the suggestion that Maloney told Laventure how to testify. Morris argued that the testimony was necessary because Laventure's testimony impugned the integrity of the defense and thus infringed upon Morris's rights to a fair trial and to counsel. Morris then moved for a mistrial on these grounds. While still pursuing his motion for a mistrial, Morris stated that the problem could be solved in part by a stipulation that the defense did not encourage any witness to present false testimony. Morris, however, also renewed his request to call Maloney as a witness and subsequently proffered Maloney's testimony. The court denied the motion for mistrial and did not allow Maloney to testify, but agreed to read the following stipulation:

> The parties stipulate and agree that no attorney representing the defendant, nor any representative of the public defender's office, has suggested or encouraged any witness to present false testimony.

On appeal, Morris now asserts that the stipulation was insufficient, and that the trial court abused its discretion by not admitting Maloney's testimony. Morris argues that a party cannot be required to stipulate to a material fact because "a colorless admission . . . may sometimes have the effect of depriving the party of the legitimate moral force of his evidence." Charles W. Ehrhardt, Florida Evidence, § 403.1, at 159 & n.32 (2001 ed.) (quoting 9 Wigmore, Evidence § 2691 (3d ed. 1940)).

Morris's reliance on Ehrhardt is misplaced. Far from being required to stipulate that no one in the Public Defender's office encouraged any witness to present false testimony, Morris suggested the stipulation. Further, we conclude that the trial court did not abuse its discretion in precluding Maloney from testifying. The only purpose for the admission of Maloney's testimony that Morris argued below and preserved for review was to rebut the suggestion that Maloney told Laventure how to testify. However, as noted by the trial judge: "The problem, of course, is that its relevancy is tenuous at best since it doesn't get to the ultimate issue, which is cured by the stipulation." Morris did not preserve any other purpose for review because he did not assert any other purpose in arguing for the admission of Maloney's testimony. See § 924.051(1)(b), Fla. Stat (2001); *Stephens v. State*, 787 So. 2d 747, 753 (Fla. 2001). 7 Accordingly, the trial court did not abuse its discretion by excluding Maloney's testimony. Further, in light of the stipulation read to the jury, the trial court did not abuse its discretion in denying the motion for a mistrial.

> FN7 In fact, when the trial judge stated that he would not allow Maloney to testify that Laventure told her the man was not black, on the ground that such testimony would be hearsay without an exception, defense counsel assured the trial court that he never intended to use Maloney for anything other than to educate the jury as to Maloney's role as a process server.

*Morris v. State*, 811 So. 2d at 665-66.

"Federal courts reviewing habeas corpus petitions are not empowered to correct erroneous evidence rulings of state trial courts." *Boykins v. Wainwright*, 737 F.2d 1539, 1544 (11th Cir. 1984), *cert. denied*, 470 U.S. 1059 (1985)(citations omitted). This Court must accord great deference to a state court evidentiary ruling and should rarely grant habeas relief on the basis of such a ruling. *Demps v. Wainwright*, 805 F.2d 1426, 1430 (11th Cir. 1986).

"Nevertheless...where a trial court's evidence ruling renders a state criminal proceeding fundamentally unfair the petitioner is entitled to relief." *Id*. at 1544. "Fundamental fairness is violated when the evidence excluded is material in the sense of a crucial, critical, highly significant factor." *Id*. (internal quotation omitted). "Rarely will an evidentiary ruling render a trial fundamentally unfair and correspondingly federal habeas corpus relief is rarely deemed appropriate for claims predicated on allegations of state evidentiary error." *Nebel v. Sec'y, Dep't of Corr.*, 2006 U.S. Dist. LEXIS 15151, 2006 WL 709330 at *3 (M.D. Fla. 2006)(citing *Boykins*, 737 F.2d at 1543-44.

The exclusion of Toni Maloney's testimony did not render Morris' trial fundamentally unfair. Defense counsel proffered the testimony of Toni Maloney (Dkt. 23, Ex. A-28 at R. 3210-26). Toni Maloney essentially testified, in relevant part, that she worked for the Public Defender's Office, and that she was asked to serve a subpoena on Laventure. While serving Laventure with the subpoena, Laventure volunteered to Toni Maloney that the man she saw outside of the victim's apartment definitely was not a black man. Toni Maloney denied ever telling Laventure that all she needed to do was to go to court and testify that the man she saw outside of the victim's apartment was not black. Instead, Toni Maloney testified that she told Laventure that "she should tell the truth about what she saw." (Id.).

When viewed in the context of the entire record, Toni Maloney's testimony was not material in the sense of being a crucial, critical, highly significant factor. Essentially, Toni Maloney's proffered testimony would have been collateral to the evidence implicating Morris in the murder. Accordingly, it is not likely that the outcome of the trial would have been different had her testimony been admitted. To the extent Toni Maloney testified that Laventure told her

that the man she saw outside the victim's apartment was not black, Laventure's trial testimony was not inconsistent with that statement. Moreover, Laventure's testimony, coupled with Julie Woodruff's testimony, established that the man Laventure saw outside of the victim's apartment could not have been Morris. Furthermore, to the extent Morris asserts that his rights were violated because Toni Maloney was not allowed to testify as to Laventure's statement to her that the man she saw was not black, the claim is procedurally barred here because the Florida Supreme Court found that "the only purpose for the admission of Maloney's testimony that Morris argued below and preserved for review was to rebut the suggestion that Maloney told Laventure how to testify." *Morris v. State*, 811 So. 2d at 666.

With respect to Toni Maloney's testimony that she never instructed Laventure to testify at trial that the man she saw outside the victim's apartment was not black, the trial court read the stipulation to the jury which stated that the parties agreed that no attorney or representative of the Public Defender's Office suggested or encouraged any witness to present false evidence (Dkt. 23, Ex. A-27 at R. 3090-91). The stipulation essentially eradicated Laventure's testimony that Toni Maloney told her how to testify, because the stipulation necessarily informed the jury that both the defense and the State agreed that no one from the Public Defender's Office told Laventure how to testify. *Cf. Greer v. Miller*, 483 U.S. 756, 766 n.8 (1987)(Courts should "normally presume that a jury will follow an instruction to disregard inadmissible evidence inadvertently presented to it, unless there is an 'overwhelming probability' that the jury will be unable to follow the court's instructions, *Richardson v. Marsh*, 481 U.S. 200, 208 (1987), and a strong likelihood that the effect of the evidence would be 'devastating' to the defendant, *Bruton v. United States*, 391 U.S. 123, 136 (1968).").

37

Furthermore, even if Toni Maloney had been allowed to testify, there was sufficient evidence at trial, including the DNA evidence, the fingerprint evidence, Morris' possession of the victim's rare coins, coin changer, and television, and Morris' admission to another prisoner that he committed the murder, that amply supported the jury's determination that Petitioner was guilty. Exclusion of Toni Maloney's testimony did not fatally infect the trial so as to deprive Morris of due process. Consequently, no constitutional violation occurred when the trial court excluded Toni Maloney's testimony at the trial.

Morris has not established that the Florida Supreme Court's determination of this claim was either an unreasonable application of Supreme Court precedent or an unreasonable determination of the facts. Accordingly, Ground Five does not warrant relief.

GROUND SIX

Mr. Morris should receive a new trial due to the improper contacts between members of the jury and a backstruck juror who attended the trial as a spectator. Mr. Morris was denied his rights under the 5th, 6th, 8th, and 14th Amendments to the United States Constitution (Dkt. 1 at pgs. 30-34; Dkt. 5 at pgs. 27-29).

In Ground Six, Morris claims that he is entitled to a new trial because of improper juror contact with a backstruck juror during the penalty phase of the trial. Morris raised this claim on direct appeal. In denying this claim, the Florida Supreme Court stated:

> Morris argues that a new trial is required due to improper juror contact with a backstruck juror turned spectator. Dorothy Sanders was initially chosen as a member of the jury. However, before the jury was sworn, Morris exercised a backstrike of Sanders. Subsequently, Sanders attended the trial as a spectator. During the penalty phase, Morris's two sisters observed Sanders conversing with jurors smoking outside the courthouse and brought this issue to Morris's attention. Morris in turn notified the trial court and requested the trial court to ask Sanders about the content of the discussions. Sanders was sworn and testified that she did talk to some of the jurors, but not about the trial. When the trial court asked if either counsel had further questions, Morris did not ask for any additional inquiry

38

of either Sanders or of the jury members. Further, after Sanders was excused and the jury returned to the courtroom, the judge asked the jury members if they had anything to report about any contacts about the case. The jurors indicated that they had nothing to report.

Morris admits that actual prejudice cannot be shown on the record, but nonetheless asserts that the right of a defendant to be tried by a jury free from improper influences is a paramount right. Morris argues that a new trial is required as a matter of public policy for the purpose of maintaining confidence in the integrity of jury trials because the potential for prejudice in this circumstance was so great.

We disagree. The record affirmatively reveals no indication of potentially harmful juror misconduct. In *Amazon v. State*, 487 So. 2d 8, 11 (Fla. 1987), this Court stated: "[P]otentially harmful misconduct is presumptively prejudicial, but the defendant has the initial burden of establishing a prima facie case that the conduct is potentially prejudicial." This Court held that the defendant's showing that a juror had dinner with his fiancé did not satisfy his burden of establishing prima facie potential prejudice because the case was not discussed at the dinner. *See id.*

Similarly, Sanders testified that she did not talk to any jurors regarding the case, and there is no per se potential prejudice rule regarding contact between a juror and a spectator or a juror and a former juror. *See Occhicone v. State*, 570 So. 2d 902, 904 (Fla. 1990) (holding that it was not an abuse of discretion to deny a motion for mistrial on the ground that a spectator told a prospective juror during voir dire that she thought the defendant was guilty where the defendant failed to establish that the jury pool had been tainted). Accordingly, we reject Morris's claim of error.

*Morris v. State*, 811 So. 2d at 666-67.

Initially, the Sixth Amendment guarantees the accused a "trial, by an impartial jury . . ." in federal criminal prosecutions. U.S. Const. amend VI. Because "trial by jury in criminal cases is fundamental to the American scheme of justice," the Due Process Clause of the Fourteenth Amendment guarantees the same right to the accused in state criminal prosecutions. *Duncan v. Louisiana*, 391 U.S. 145, 149 (1968). In *Remmer v. United States*, 347 U.S. 227, 229 (1954), the Supreme Court held:

In a criminal case, any private communication, contact, or tampering, directly or indirectly, with a juror during a trial about the matter pending before the jury is, for obvious reasons, deemed presumptively prejudicial, if not made in pursuance of known rules of the court and the instructions and directions of the court made during the trial, with full knowledge of the parties. The presumption is not conclusive, but the burden rests heavily upon the Government to establish, after notice to and hearing of the defendant, that such contact with the jury was harmless to the defendant.

Morris admits that "he cannot show actual prejudice on the record" (Dkt. 5 at pg. 28). Nonetheless, he argues that "the potential for prejudice was so great that it cannot be confidently assumed that he was tried by an impartial and untainted jury." (Id.). Morris essentially argues that because of the backstruck juror's contact with some jurors during the penalty phase of the trial, some or all of the jurors were potentially biased against him. Morris' claim fails, however, because to maintain a claim that a biased juror prejudiced him, he must show that the juror was *actually* biased against him. *Goeders v. Hundley*, 59 F. 3d 73 (8th Cir. 1995)(citing *Smith v. Phillips*, 455 U.S. 209 (1981)). Morris fails to make this showing.

In *Phillips*, the Supreme Court held that "the remedy for allegations of juror partiality is a hearing in which the defendant has the opportunity to prove actual bias." 455 U.S. at 215. In Morris' case, the trial court held such a hearing (Dkt. 23, Ex. A-33 at pgs. 4283-89). The Court questioned the backstruck juror regarding conversations with the jurors. She testified under oath that she never had any conversations with the jurors regarding the trial (Id. at pgs. 4286-88). After the trial court finished questioning the backstruck juror, it gave the prosecutor and defense counsel the opportunity to question the backstruck juror (Id. at pg. 4288). The attorneys, however, did not ask any questions (Id.). When the jury returned to the courtroom, the trial court asked the jurors "[a]nd there's nothing you have to report about any contacts about the case in your presence or that you know about?" (Id. at 4289). The jurors apparently indicated that they

had nothing to report (Id.). Neither the prosecutor or defense counsel requested that they be allowed to question the jurors (Id.).

The State met its burden to establish that the backstruck juror's contact with the jurors was harmless. *Remmer v. United States, supra*. There is no indication in the record that the jury was actually biased against Morris, or that any juror was tainted by a conversation with the backstruck juror. The Florida Supreme Court found that the record revealed no potentially harmful juror misconduct. *Morris v. State*, 811 So. 2d at 667. Morris has not rebutted the presumed correctness of this factual finding by clear and convincing evidence. See 28 U.S.C. § 2254(e).

Morris has not established that the Florida Supreme Court's determination of this claim was either an unreasonable application of Supreme Court precedent or an unreasonable determination of the facts. Ground Six will therefore be denied.

GROUND SEVEN

Mr. Morris's death sentence is disproportionate thus violating his rights under the 5th, 6th, 8th, and 14th Amendments to the United States Constitution. (Dkt. 1 at pgs. 34-36; Dkt. 5 at pgs. 29-31).

In Ground Seven, Morris essentially argues that his death sentence is disproportionate in the circumstances of his case because mitigating circumstances should have rendered him ineligible for the death penalty. He further argues that under Florida law, the death penalty is reserved "for only the most aggravated and least mitigated of first degree murders[.]" (Dkt. 5 at pg. 29).

The federal constitution does not require proportionality review. *Pulley v. Harris*, 465 U.S. 37, 44 (1984). Where a state court undertakes proportionality review "in good faith" and

concludes that the proportionality principle was not violated, the Constitution does not require

the federal court "to look behind that conclusion." *Walton v. Arizona*, 497 U.S. 639, 656 (1990),

*overruled on other grounds by Ring v. Arizona*, 536 U.S. 584 (2002). The Eleventh Circuit

Court of Appeals has held:

> A federal habeas court should not undertake a review of the state supreme court's
> proportionality review and, in effect, "get out the record" to see if the state court's
> findings of fact, their conclusion based on a review of similar cases, was
> supported by the "evidence" in the similar cases. To do so would thrust the federal
> judiciary into the substantive policy making area of the state.

*Moore v. Balkcom*, 716 F.2d 1511, 1518 (11th Cir. 1983).

In denying Morris' proportionality claim, the Florida Supreme Court found:

> Morris argues that the death penalty is disproportionate and that his death
> sentence should be reduced to life. We disagree. The function of this Court's
> proportionality review is to foster uniformity in death penalty law. *See Beasley v.
> State*, 774 So. 2d 649, 673 (Fla. 2000) (citing *Tillman v. State*, 591 So. 2d 167,
> 169 (Fla. 1991)). The analysis by which to achieve this function is to "consider the
> totality of circumstances in a case, and to compare it with other capital cases." *Id.*
> (quoting *Porter v. State*, 564 So. 2d 1060, 1064 (Fla. 1990)). As we have
> explained:

>> The death penalty is reserved "for the most aggravated and
>> unmitigated of most serious crimes." *Clark v. State*, 609 So. 2d
>> 513, 516 (Fla. 1992) (quoting *State v. Dixon*, 283 So. 2d 1, 7 (Fla.
>> 1973)). This Court performs proportionality review to prevent the
>> imposition of "unusual" punishments contrary to article I, section
>> 17 of the Florida Constitution. *See Tillman v. State*, 591 So. 2d
>> 167, 169 (Fla. 1991). In deciding whether death is a proportionate
>> penalty, the Court must consider the totality of the circumstances
>> of the case and compare the case with other capital cases. *See
>> Urbin v. State*, 714 So. 2d 411, 416-17 (Fla. 1998). "It is not a
>> comparison between the number of aggravating and mitigating
>> circumstances." *Porter v. State*, 564 So. 2d 1060, 1064 (Fla. 1990).

*Sexton v. State*, 775 So. 2d 923, 935 (Fla. 2000). Further, this Court has stated:

> Proportionality review "requires a discrete analysis of the facts,"

> *Terry v. State*, 668 So. 2d 954, 965 (Fla. 1996), entailing a
> qualitative review by this Court of the underlying basis for each
> aggravator and mitigator rather than a quantitative analysis.

*Urbin*, 714 So. 2d at 416.

In this case, the trial judge found four statutory aggravators: (1) the crime was committed while Morris was on parole from a previous felony; (2) Morris was previously convicted of a felony involving the use or threat of violence; (3) the crime was committed for financial gain; and (4) HAC. Morris does not challenge the trial court's findings relative to any of these aggravators.

Morris focuses on the mitigation that consists of the circumstances of his childhood, history of drug abuse, and organic brain damage. We acknowledge that the trial court found the "substantially impaired capacity to conform conduct to the requirements of law" statutory mitigator. However, although the trial court found that Morris "suffers from chronic brain syndrome with mixed features including frontal lobe brain damage," the trial court explained:

> What is not clear from the evidence is how this condition relates to
> the murder. Dr. Henry Dee testified that people with this condition
> typically make choices against the odds, that when they commit
> crimes, they are unplanned and disorganized crimes. It is unusual
> for such patients to form bonds with others, he said. Knowing his
> condition, Dr. Dee would have expected a more extensive record
> for this defendant. The court is left with the overall impression that
> impulsiveness is a dominant feature. The defendant is not
> powerless to control his behavior, but his ability to do so may be
> substantially impaired. The court is reasonably convinced that this
> factor exists and has given it moderate weight.

We conclude that the death sentence in this case, considering the totality of the circumstances, is proportionate when compared to other similar cases where the death sentence was affirmed, even in light of the substantial mitigation that the trial court found and weighed. *See Hayes v. State*, 581 So. 2d 121, 126-27 (Fla. 1991) (affirming the death penalty after the trial court found the "committed for pecuniary gain" and "committed while engaged in armed robbery" aggravators, the "age" statutory mitigator, and the "low intelligence," "developmental learning disability," and "product of a deprived environment" nonstatutory mitigators); *Bowden v. State*, 588 So. 2d 225 (Fla. 1991) (affirming the death sentence where trial court found the "previous conviction of a violent felony" and "HAC" aggravators, the "age" statutory mitigator, and the "product of a terrible childhood" nonstatutory mitigator); *Hudson v. State*, 538 So. 2d 829, 831 n.5 (Fla.

1989) (affirming the death sentence where trial court found the "previous conviction of a violent felony" and "committed during armed burglary" aggravators, and the "being under extreme mental or emotional disturbance," "impaired capacity to conform conduct to requirements of law," and "age" statutory mitigators).

*Morris v. State*, 811 So. 2d at 668-69.

Having reviewed the Florida Supreme Court's opinion, this Court finds nothing in the record to indicate a lack of good faith in the Florida Supreme Court's proportionality review. The Florida Supreme Court's determination that Morris' death sentence was not disproportionate was neither contrary to, nor an unreasonable application of, federal law. Moreover, the decision did not rest upon an unreasonable determination of the facts. Under § 2254(d), federal habeas relief is not warranted for this claim.

GROUND EIGHT

The trial court erred in finding that Mr. Morris's history of drug abuse is not mitigation. Mr. Morris was denied his rights under the 5th, 6th, 8th, and 14th Amendments to the United States Constitution. (Dkt. 1 at pgs. 36-39; Dkt. 5 at pgs. 31-33).

In Ground Eight, Morris essentially argues that he was denied his constitutional rights when the state trial court rejected a valid non-statutory mitigating factor, i.e., Morris' history of drug abuse and addiction. Morris raised this claim on direct appeal. In denying this claim, the Florida Supreme Court found:

Morris next argues that the trial court erred in finding that a history of drug abuse is not mitigating. In the trial court's sentencing order, under a section labeled: "The defendant began using alcohol and drugs at an early age, and developed a lifelong addiction problem," the court stated:

*Established* and uncontroverted. That the defendant used drugs in the past is *not mitigating*. Moreover, there is no evidence that he was using drugs in September, 1994 when he murdered Mrs. Livingston. This factor is entitled to *little weight*.

44

(Emphasis supplied.) In this case, the trial court found as established and uncontroverted that Morris developed a lifelong addiction to drugs and alcohol. Thus, under the facts of this case we agree with Morris that his history of drug and alcohol abuse and addiction is a valid nonstatutory mitigator, and that the defendant does not have to be under the influence of the drugs or alcohol at the time of the murder for this mitigating circumstance to be weighed. *See Mahn v. State*, 714 So. 2d 391, 401 (Fla. 1998).

Although the trial court's order on this point is confusing, it appears that the trial court did find and weigh the prior history of drug abuse and addiction. Under these circumstances, and considering all of the other aggravation and mitigation in the case that the trial court evaluated, we conclude that any inaccuracy in the trial court's statements is harmless beyond a reasonable doubt. *See Barwick v. State*, 660 So. 2d 685, 695-96 (Fla. 1995).

*Morris v. State*, 811 So. 2d at 667.

First, this Court agrees with the Florida Supreme Court's conclusion that the trial judge "did find and weigh the prior history of drug abuse and addiction." The trial court expressly found that Morris' history of drug and alcohol abuse was "established and uncontroverted." (Dkt. 23, Ex. A-36 at R. 96). Furthermore, even though the trial court stated "[t]hat the defendant used drugs in the past is not mitigating" (Id.), the trial court nonetheless weighed the mitigating factor because it expressly found that "[t]his factor *is entitled to little weight*." (Id.)(emphasis added). Despite Morris' contentions, the state trial court did not reject Morris' history of drug and alcohol abuse as a mitigating factor. Rather, the court considered his history of drug and alcohol abuse and found that it was entitled to "little weight" because Morris was not under the influence of drugs at the time of the murder.[11]

"[T]he Eighth and Fourteenth Amendments require that the sentencer in a capital case consider any evidence which mitigates against the imposition of the death penalty." *Glock v.*

---

[11]In other words, the state court expressly found that Morris' past drug use was a mitigating factor and gave it "little weight" because it wasn't mitigating in nature since Morris wasn't using drugs at the time of the murder.

*Moore*, 195 F.3d 625, 637 (11th Cir. 1999) (citing *Lockett v. Ohio*, 438 U.S. 586, 608 (1978)). A

sentencer may not "refuse to consider, *as a matter of law*, any relevant mitigating evidence."

*Eddings v. Okla.*, 455 U.S. 104, 115 (1982)(emphasis in original). "The sentencer...may

determine the weight to be given relevant mitigating evidence. But [the sentencer] may not give

it no weight by excluding such evidence from [his] consideration." *Id.* "[W]hile sentencing

courts may not refuse to consider evidence offered in mitigation, they need not decide that the

facts established by that evidence have mitigating force in the context of the case. The

Constitution requires that the sentencer be allowed to consider and give effect to evidence

offered in mitigation, but it does not dictate the effect that must be given once the evidence is

considered; it does not require the sentencer to conclude that a particular fact is mitigating or to

give it any particular weight." *Schwab v. Crosby*, 451 F.3d 1308, 1329 (11th Cir. 2006).

"Trial court's findings on mitigating factors are presumed to be correct, *see, e.g.*,

*Magwood v. Smith*, 791 F.2d 1438, 1450 (11th Cir.1986), and will be upheld if they are

supported by the record. *See, e.g.*, 28 U.S.C. § 2254(d)." *Atkins v. Singletary*, 965 F.2d 952, 962

(11th Cir. 1992). This Court's review of the record demonstrates that the trial court considered

and weighed Morris' prior history of drug abuse and addiction, but gave the mitigating factor

little weight. "Acceptance of nonstatutory mitigating factors is not constitutionally required; the

Constitution only requires that the sentencer consider the factors." *Atkins*, 965 F.2d at

962)(citing *Blystone v. Pennsylvania*, 494 U.S. 299, 308 (1990)).

Petitioner has not demonstrated by clear and convincing evidence that the Florida

Supreme Court's finding that the trial court "did find and weigh [Morris'] prior history of drug

abuse and addiction" was incorrect. *See Parker v. Head*, 244 F.3d 831, 835-36 (11th Cir. 2001);

28 U.S.C. § 2254(e)(1). Thus, Petitioner has not demonstrated that the Florida Supreme Court's decision was contrary to, or an unreasonable application of, clearly established federal law or an unreasonable determination of the facts.

Second, Petitioner is not entitled to habeas relief based on trial error unless he can establish that it resulted in "actual prejudice." *Brecht*, 507 U.S. at 637. "When challenging the imposition of the death penalty, 'the question is whether there is a reasonable probability that, absent the errors, the sentencer--including an appellate court, to the extent it independently reweighs the evidence--would have concluded that the balance of aggravating and mitigating circumstances did not warrant death.'" *Bolender v. Singletary*, 16 F.3d 1547, 1561 (11th Cir. 1994)(evaluating the prejudice prong of an ineffective assistance of counsel claim in the context of the penalty phase of a capital trial)(quoting *Strickland*, 466 U.S. at 695).

The trial judge found four aggravating circumstances: 1) the crime was committed while Morris was on parole from a previous felony conviction; 2) Morris has been previously convicted of a felony involving the use or the threat of violence to some person; 3) the crime was committed for financial gain; and 4) the crime was especially heinous, atrocious or cruel (Dkt. 23, Ex. A-36 at R. 91-93). The trial court found twenty-one (21) mitigating factors which, collectively, were entitled to great weight (Id. at R. 94-98). Despite the number of mitigating factors, and the collective weight given to them, the trial court found that "the aggravating circumstances outweigh the mitigating factors by a substantial margin." (Id. at R. 98).

The state trial court did not commit constitutional error in its consideration and weighing of Morris' prior history of drug and alcohol abuse and addiction. Moreover, in light of the gravity of the aggravating circumstances, and the trial court's determination that the "the

47

aggravating circumstances outweigh the mitigating factors by a substantial margin," any

perceived error arising from the state trial court's "confusing" discussion of Morris' history of

drug and alcohol abuse has not been shown to have been prejudicial, as there is no reasonable

probability that had the trial court considered this mitigating factor, without regard to whether

Morris was under the influence at the time of the murder, the state trial court would have

concluded that the balance of aggravating and mitigating circumstances did not warrant death.

*Buenoano v. Singletary*, 74 F.3d 1078, 1085 (11th Cir. 1996).

Accordingly, Ground Eight does not warrant federal habeas relief.

GROUND NINE

The trial court erred in refusing to instruct the jury on specific non-statutory mitigating circumstances. Mr. Morris was denied his rights under the 5th, 6th, 8th, and 14th Amendments to the United States Constitution (Dkt. 1 at pgs. 39-42; Dkt. 5 at pgs. 33-34).

In Ground Nine, Morris complains that during the penalty phase of the trial, he requested

a special jury instruction which listed 16 specific mitigating factors for the jury to consider. The

trial court denied Morris' requested jury instruction and gave the standard Florida instruction on

non-statutory mitigation. Morris argues that without the requested special jury instruction, the

jury was unable to meaningfully assign weight to the mitigating factors and therefore the jury's

recommendation of the death sentence is constitutionally unreliable.

Initially, Respondent argues that the federal constitutional claim Morris raises in Ground

Nine is unexhausted and procedurally barred.[12] The Court agrees. When Morris raised this issue

on direct appeal, he argued only that the trial court erred under state law in failing to give the

---

[12]In his reply to Respondent's response, Morris does not specifically dispute Respondent's assertion that Ground Nine is unexhausted and procedurally barred (See Dkt. 19).

special jury instruction on non-statutory mitigating factors (Dkt. 23, Ex. A-39 at Initial Brief pgs. 76-84). He did not argue that the failure to give the instruction also violated his federal constitutional rights (Id.). Therefore, the federal constitutional dimension of this claim has been waived and is procedurally barred here. *Sullivan v. Wainwright*, 695 F.2d 1306 (11th Cir. 1983). Even if state law bears some relation to federal constitutional requirements, *Luton v. Grandison*, 44 F.3d at 628, the presentation of the claim in state law terms is insufficient to support a finding that the state courts have had a fair opportunity to address the constitutional claim. *Duncan v. Henry*, 513 U.S. 364. Morris has not presented cause to excuse his default or established his actual innocence, and therefore he is procedurally barred from raising this claim here.

Even if Morris' claim was not procedurally barred, it lacks merit. Under Florida Supreme Court precedent, there is no requirement that the trial court give specific instructions on nonstatutory mitigating circumstances urged by a defendant. *See, e.g., Jones v. State*, 612 So. 2d 1370, 1375 (Fla. 1992), *cert. denied*, 510 U.S. 836 (1993); *Robinson v. State*, 574 So. 2d 108, 111 (Fla.), *cert. denied*, 502 U.S. 841 (1991). Under the Eighth and Fourteenth Amendments, a sentencing body "may not be precluded from considering, as a mitigating factor, any aspect of a defendant's character or record and any of the circumstances of the offense that the defendant proffers as a basis for a sentence less than death." *Lockett v. Ohio*, 438 U.S. 586, 604 (1978). It is not enough "simply to allow the defendant to present mitigating evidence to the sentencer." *Penry v. Lynaugh*, 492 U.S. 302, 319 (1989). To "ensure 'reliability in the determination that death is the appropriate punishment in a specific case,'" the jury "must be able to consider and give effect to any mitigating evidence relevant to a defendant's background, character, or the circumstances of the crime." *Id.* at 328 (quoting *Woodson v. North Carolina*, 428 U.S. 280, 305

(1976)) (plurality).

*Lockett* and its progeny merely require, however, that a defendant be allowed to present all mitigating evidence and that the sentencer not be precluded from considering this evidence. Accordingly, under *Lockett*, to prevail on his claim that the trial court erred in failing to instruct the jury on the nonstatutory mitigating factors, Morris must establish either that the jury was instructed not to consider -- and therefore could not consider -- nonstatutory mitigating evidence, or that the trial court limited itself solely to a consideration of statutory mitigating factors in fashioning its sentence.

Trial counsel did introduce evidence supporting nonstatutory mitigating aspects of his character. However, nothing in the record indicates that the trial court instructed the jury not to consider that evidence of those nonstatutory mitigating factors. In fact, the trial court judge instructed the jury, in pertinent part, as follows:

> Should you find sufficient aggravating circumstances have been proven beyond a reasonable doubt, it will then be your duty to determine whether mitigating circumstances exist that outweigh the aggravating circumstances.
>
> Mitigating factors include any aspect of the defendant's character, record, or background, and any other circumstance of the offense that would mitigate against the imposition of the death penalty.
>
> If one or more aggravating circumstances which is sufficient to justify the imposition of the death penalty is proved beyond a reasonable doubt, you should consider all the evidence tending to establish one or more mitigating circumstances and give that evidence such weight as you feel it should receive in reaching your conclusion as to what sentence should be imposed.
>
> The weighing of aggravating and mitigating circumstances in not just a counting process. You are free to assign whatever weight you feel is appropriate to the aggravating and the mitigating circumstances.
>
> A mitigating circumstance need not be proved beyond a reasonable doubt

50

by the defendant. If you are reasonably convinced that a mitigating circumstance exists, you may consider it as established.

The sentence that you recommend to the Court must be based upon facts that you find from the evidence and on the law I have given you in these instructions. You should weigh the aggravating circumstances against the mitigating circumstances, and your advisory sentence must be based on these considerations.

(Dkt. 23, Ex. A-35 at R. 4580-81).

Therefore, the jury was at liberty to consider -- in addition to the statutory factors -- "any aspect of [Morris'] character, record, or background, and any other circumstance of the offense that would mitigate against the imposition of the death penalty" based on the evidence presented during the guilt or sentencing phases of the trial. Clearly, the jury was not prevented from considering nonstatutory mitigating evidence. Nor was the jury instructed that it could not consider nonstatutory mitigating evidence. To the contrary, the jury was instructed that it was their "duty to determine whether mitigating circumstances exist that outweigh the aggravating circumstances." The Constitution requires only that the jury be permitted to consider such evidence. That it was not persuaded by this evidence does not render the resulting advisory verdict of death unconstitutionally infirm. *Atkins v. Singletary*, 965 F.2d 952, 962 (11th Cir. 1992). Consideration of such factors is "sufficient to satisfy the dictates of the Eighth Amendment." *Blystone v. Pennsylvania*, 494 U.S. 299, 308 (1990).

Morris fails to show that he has a federal constitutional right to the jury instruction he requested, or that the circumstances of this case demonstrate that the jury's sentence of death was unreliable. Accordingly, the Court concludes that Ground Nine does not warrant federal habeas relief.

51

GROUND TEN

Under Apprendi and Ring the Florida death penalty sentencing statutes as applied are unconstitutional under the 5ᵗʰ, 6ᵗʰ , and 14ᵗʰ Amendments of the United States Constitution and corresponding provisions of the Florida Constitution (Dkt. 1 at pgs. 43-46).

Appellate counsel was ineffective for failing to raise on direct appeal that the Florida death sentencing statue as applied is unconstitutional under the Sixth, Eight, and Fourteenth Amendments of the United States Constitution under Apprendi and Ring (Dkt. 5 at pgs. 35-39).

Morris argues that Florida's death penalty sentencing scheme violates *Ring v. Arizona*, 536 U.S. 584 (2002)[13] and *Apprendi v. New Jersey*, 530 U.S. 466 (2000).[14] Specifically, Petitioner asserts that death penalty aggravating circumstances are elements of the offense which must be charged in the indictment, proven beyond a reasonable doubt, and submitted to the jury for a unanimous verdict. Morris also asserts that appellate counsel was ineffective in failing to raise this claim on direct appeal. Petitioner raised these claims in his petition for writ of habeas corpus in the Florida Supreme Court. In denying Morris' claims, the Florida Supreme Court found:

> In his first habeas claim, Morris asserts that Florida's capital sentencing scheme is unconstitutional as applied in this case under the Supreme Court's decisions in *Apprendi v. New Jersey*, 530 U.S. 466, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000), and *Ring v. Arizona*, 536 U.S. 584, 122 S. Ct. 2428, 153 L. Ed. 2d 556 (2002). Morris also asserts that appellate counsel was ineffective in failing to raise this issue on direct appeal. We conclude that Morris is not entitled to relief on this claim. We recently held that *Ring* does not apply retroactively to death sentences that were final when *Ring* was decided. *See Johnson v. State*, 904 So. 2d 400, 412 (Fla. 2005). This includes Morris's sentence. Even prior to our decision in *Johnson*, this Court had repeatedly relied on the presence of the prior violent

---

[13]In *Ring*, the United States Supreme Court held unconstitutional the Arizona capital sentencing statute to the extent that it allowed a sentencing judge, sitting without a jury, to find an aggravating circumstance necessary for imposition of the death penalty.

[14]In *Apprendi*, the Supreme Court held that, "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Apprendi*, 530 U.S. at 490.

felony aggravating circumstance in rejecting *Ring* claims. *See, e.g., Smith v. State*, 866 So. 2d 51, 68 (Fla. 2004); *Davis*, 875 So. 2d at 374; *Johnston v. State*, 863 So. 2d 271, 286 (Fla. 2003). In this case, the trial court found as an aggravating circumstance that Morris had been previously convicted of a felony involving the use or threat of violence. Therefore, if appellate counsel had raised this issue on direct appeal, it likely would have been denied. Appellate counsel cannot be deemed ineffective for failing to raise a meritless issue. *See Bryant v. State*, 901 So. 2d 810, 826 (Fla. 2005) ("Appellate counsel is under no duty to assert a meritless claim."); *Spencer*, 842 So. 2d at 74 ("Appellate counsel will not be considered ineffective for failing to raise issues that have little or no chance of success."); *Freeman v. State*, 761 So. 2d 1055, 1070 (Fla. 2000) ("Appellate counsel cannot be ineffective for failing to raise an issue which is without merit.").

*Morris v. State*, 931 So. 2d at 836-37.

Initially, reliance on *Ring* is barred by the nonretroactivity doctrine of *Teague v. Lane*, 489 U.S. 288 (1989). *See Schriro v. Summerlin*, 542 U.S. 348, 358 (2004)("*Ring* announced a new procedural rule that does not apply retroactively to cases already final on direct review."); *Turner v. Crosby*, 339 F.3d 1247, 1286 (11th Cir. Fla. 2003)("*Ring*, like *Apprendi*, does not apply retroactively on collateral review in federal court in Turner's case because his convictions and sentences became final before the Supreme Court announced *Ring*. Thus, Turner cannot collaterally challenge his convictions and sentences on the basis of a claimed *Ring* error.").

Accordingly, since Morris' convictions and sentence became final on February 21, 2002, before the Supreme Court announced *Ring* on June 24, 2002, Morris cannot pursue a claim under *Ring*. Furthermore, to the extent Morris asserts appellate counsel was ineffective in failing to raise a *Ring* claim on direct appeal, Eleventh Circuit precedent rejects the argument "that an attorney's failure to anticipate a change in the law constitutes ineffective assistance of counsel." *United States v. Ardley*, 273 F.3d 991, 993 (11th Cir. 2001).

Next, Morris did not raise his *Apprendi/Ring* claim on direct appeal, as required by

Florida law. *See Jones v. State*, 928 So.2d 1178, 1182 n.5 (Fla. 2006). Thus his claim is procedurally barred. Petitioner has not shown "cause and prejudice" or that a "fundamental miscarriage of justice" will occur if this Court does not reach the merits.

Moreover, Morris' claim that appellate counsel was ineffective in failing to raise an *Apprendi/Ring* claim on direct appeal does not have merit as Morris cannot show that an *Apprendi/Ring* violation occurred. The Florida Supreme Court has recognized that the maximum penalty for first degree murder under Florida's sentencing scheme is death. *See Mills v. Moore*, 786 So. 2d 532, 536-38 (Fla.), *cert. denied*, 532 U.S. 1015 (2001). Likewise, the Florida Supreme Court has consistently denied challenges premised on *Ring*, concluding that Florida's sentencing scheme complies with the Sixth Amendment. *See, e.g., Kormondy v. State*, 845 So. 2d 41, 54 (Fla. 2003) (concluding that *Ring* does not require either notice of the aggravating factors on which the State will rely at sentencing or a special verdict form evidencing the aggravating factors found by the jury). Additionally, Morris was found guilty by a unanimous jury of the crimes that formed the basis of the "committed for financial gain" aggravator to which the trial court accorded great weight (Dkt. 23, Ex. A-36 at R. 92).

Morris has not demonstrated that the Florida Supreme Court's finding that Florida's capital sentencing scheme comports with constitutional requirements is either contrary to, or an unreasonable application of, clearly established federal law. Morris, therefore, has not established that appellate counsel performed deficiently by failing to raise this issue on appeal. Accordingly, Ground Ten does not warrant relief.

GROUND ELEVEN

Mr. Morris was denied his rights under the 5th, 6th, 8th, and 14th Amendments to the United States

Constitution because the trial court denied his request that a special jury instruction be read to the jury regarding mitigating circumstances. To the extent that appellate counsel failed to fully litigate this issue on direct appeal, appellate counsel was ineffective (Dkt. 1 at pgs. 46-50; Dkt. 5 at pgs. 39-40).

In Ground Eleven, Morris essentially repeats his argument he made under Ground Nine that his constitutional rights were violated when the trial court refused to give the jury Morris' requested instruction on non-statutory mitigating circumstances. For the reasons discussed in Ground Nine, Ground Eleven is without merit.

Morris also asserts that "to the extent that appellate counsel failed to fully litigate this issue on direct appeal, appellate counsel was ineffective." To the extent Morris is attempting to raise a claim of ineffective assistance of appellate counsel, his allegations are vague and conclusory and are inadequate as a matter of law to raise a cognizable claim of ineffective assistance of counsel. *See Tejada v. Dugger*, 941 F.2d 1551, 1559 (11th Cir. 1991) (recognizing that vague, conclusory, or unsupported allegations cannot support an ineffective assistance of counsel claim). Morris wholly fails to explain how appellate counsel failed to "fully litigate" this issue on direct appeal. This ineffective assistance of counsel claim is insufficiently pled and therefore must be denied.

To the extent Morris may be asserting that appellate counsel was ineffective in failing to raise the federal dimension of his claim on direct appeal, Morris cannot show that counsel's performance was deficient or prejudice because his underlying claim is without merit (See Ground Nine, *supra*). The failure to raise a meritless claim does not render a counsel's performance deficient. *Chandler v. Moore*, 240 F.3d 907, 917-18 (11th Cir. 2001) (counsel not ineffective for failing to raise a nonmeritorious issue). Accordingly, Ground Eleven does not

warrant relief.

## GROUND TWELVE

Florida Statute 921.141 is facially vague and overbroad in violation of the 8th and 14th Amendments, and the unconstitutionality was not cured because the jury did not receive adequate guidance. Mr. Morris's death sentence is premised on fundamental error which must be corrected [sic] to the extent trial and appellate counsel failed to litigate this issue, counsel was ineffective.

In Ground Twelve, Morris essentially presents two claims. First, he complains that the jury instruction on the aggravator "commission of a murder during the course of a robbery," is unconstitutional on its face and as applied. Specifically, Petitioner argues that the jury instruction was unconstitutional because it shifted the burden of proof to Morris on the central sentencing issue of whether death was the appropriate sentence, and it precluded the jury from considering mitigating evidence since the jury was effectively told that once aggravating circumstances were established, it did not need to consider mitigating circumstances unless they were sufficient to outweigh the aggravating circumstances. Second, Morris complains that the trial court's jury instruction on the role of the jury diluted the jury's sense of responsibility in determining the proper sentence.

Initially, Respondent asserts that both of Morris' claims under Ground Twelve are procedurally barred (Dkt. 14 at pgs. 118-119). The Court agrees. Petitioner did not raise these claims on direct appeal of his convictions (Dkt. 23, Ex. A-39). He did, however, raise the claims in his state Petition for Writ of Habeas Corpus (Dkt. 23, Ex. B-9). The Florida Supreme Court held that Morris' substantive claims regarding these jury instructions were procedurally barred due to trial counsel's failure to object to these jury instructions at trial. *Morris v. State*, 931 So. 2d at 837. *See Hernandez v. State*, 919 So. 2d 707, 710 (Fla. 5th DCA 2006)(Under Florida law,

an error in a jury instruction is only reviewed for fundamental error if the claim was not properly preserved.). "[A] procedural default does not bar consideration of a federal claim on either direct or habeas review unless the last state court rendering a judgment in the case 'clearly and expressly' states that its judgment rests on a state procedural bar." *Harris v. Reed*, 489 U.S. 255, 263 (1989) (citation omitted).

In this case, the Florida Supreme Court "clearly and expressly" stated that its determination of these claims rested on a state procedural bar. Therefore, the claims Morris presents in Ground Twelve are procedurally barred.[15]

Therefore, this Court may only review the merits of these claims if Morris "can show 'cause' for the default and 'prejudice attributable thereto,' or demonstrate that failure to consider the federal claim will result in a 'fundamental miscarriage of justice.'" *Harris*, 489 U.S. at 262 (citations omitted). Morris has not shown either.

Ordinarily, to demonstrate "cause," the appellant must "show that some 'objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule.'" *Siebert v. Allen*, 455 F.3d 1269, 1272 (11th Cir. 2006) (quoting *Murray v. Carrier*, 477 U.S. 478, 488 (1986)). "Such external impediments include evidence that could not reasonably have been discovered in time to comply with the rule; interference by state officials that made compliance impossible; and ineffective assistance of counsel at a stage where the petitioner had a right to counsel." *Mize v. Hall*, 532 F.3d 1184, 1190 (11th Cir. 2008). Morris appears to assert

---

[15]This is so even though the Florida Supreme Court also denied the claims on the merits. *See Morris v. State*, 931 So. 2d at 837. Under Eleventh Circuit precedent, "where a state court has ruled in the alternative, addressing both the independent state procedural ground and the merits of the federal claim, the federal court should apply the state procedural bar and decline to reach the merits of the claim." *Alderman v. Zant*, 22 F.3d 1541, 1549 (11th Cir. 1994).

ineffective assistance of trial and appellate counsel as cause for his procedural default. (See Dkt. 1 at pg. 50)("[T]o the extent trial and appellate counsel failed to litigate this issue, counsel was ineffective.").

To the extent Morris claims ineffective assistance of appellate counsel as cause for his procedural default, he did not present to the state courts a claim that appellate counsel was ineffective in failing to litigate these claims. In his state Petition for Writ of Habeas Corpus (Dkt. 23, Ex. B-9 at pg. 19), Morris only asserted, in entirely vague and conclusory terms, that "to the extent *trial counsel* failed to litigate these issues, *trial counsel* was ineffective." (emphasis added). Constitutionally ineffective assistance of counsel can constitute cause for a procedural default if that claim is not itself procedurally defaulted. *Edwards v. Carpenter*, 529 U.S. 446, 451-52 (2000). In other words, in order for Morris to rely on ineffective assistance of counsel as cause for his default, the "claim of ineffective assistance [of counsel must] be presented to the state courts as an independent claim before it may be used to establish cause for a procedural default." *Mize v. Hall*, 532 F.3d at 1192 n.5 (citation omitted). Morris did not raise this ineffective assistance contention as an independent claim in the state courts. Morris therefore cannot assert ineffective assistance of appellate counsel as cause for the procedural default of his unconstitutional jury instructions claims. His ineffective assistance of appellate counsel claim is unexhausted and also procedurally defaulted.[16]

---

[16]In his federal habeas petition, Morris does not raise an independent claim of ineffective assistance of appellate counsel in failing to raise on direct appeal the claims challenging the constitutionality of the jury instructions. To the extent Morris' federal habeas petition may be liberally construed as raising an ineffective assistance of appellate counsel claim in failing to raise these claims on direct appeal, the claim is unexhausted and without merit. Because trial counsel did not object to the jury instructions, the issue was not preserved for appeal. Moreover, because the underlying claims lack merit, appellate counsel was not ineffective in failing to raise a meritless claim.

To the extent Morris asserts trial counsels' failure to object to the jury instructions is cause for his procedural default, this claim is also unexhausted and procedurally defaulted. Morris raised this claim in his Rule 3.851 postconviction motion filed in the trial court (Dkt. 23, Ex. B-2 at R. 250-52). The trial court denied the claim (Dkt. 23, Ex. B-5 at R. 797-98). Morris appealed the denial of his postconviction motion. Morris, however, failed to appeal the denial of this ineffective assistance of trial counsel claim (Dkt. 23, Ex. B-9). Consequently, Morris deprived the state courts of a "full and fair opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. at 845. A federal court cannot grant a habeas petition by a state prisoner unless the petitioner has exhausted his available state court remedies. *Snowden v. Singletary*, 135 F.3d at 735. Morris' failure to appeal the trial court's denial of this claim renders the claim unexhausted for purposes of federal review. *Leonard v. Wainwright*, 601 F.2d 807, 808 (5th Cir. 1979) (Florida state remedies are exhausted after appeal to the district court of appeal from denial of a collateral attack upon a conviction).

As noted, *supra*, in his state Petition for Writ of Habeas Corpus, Morris did assert that "to the extent trial counsel failed to litigate these issues, trial counsel was ineffective." (Dkt. 23, Ex. B-9 at pg. 19). In Florida, "[i]t is well settled that claims of ineffective assistance of trial counsel, with rare exceptions not relevant here, are cognizable only by rule 3.850 and may not be raised by a petition for habeas corpus before an appellate court." *State v. Dist. Court of Appeal*, 569 So. 2d 439, 441 (Fla. 1990).

A petitioner requesting a federal court to issue a writ of habeas corpus must present his claims to the state courts in a procedurally correct manner. *Upshaw v. Singletary*, 70 F.3d 576,

579 (11th Cir. 1995). The procedurally correct way for Morris to have exhausted his ineffective assistance of trial counsel claim in the Florida state courts was to present his claim in his Rule 3.851 motion, then raise the claim on appeal from the denial of the Rule 3.851 motion. Morris did not do so. Therefore, Morris cannot assert ineffective assistance of trial counsel as cause for the procedural default of his unconstitutional jury instructions claims, because his ineffective assistance of trial counsel claim is unexhausted and also procedurally defaulted.[17]

Furthermore, Morris has not shown that the failure to consider his procedurally barred claim would result in a "fundamental miscarriage of justice." *Harris*, 489 U.S. at 262. To demonstrate a "fundamental miscarriage of justice," Morris must "show that, in light of new evidence, it is probable that no reasonable juror would have convicted him." *Mize v. Hall,* 532 F.3d at 1190 (citing *Schlup v. Delo*, 513 U.S. 298, 327 (1995)). "A 'fundamental miscarriage of justice' occurs in an extraordinary case, where a constitutional violation has resulted in the conviction of someone who is actually innocent." *Henderson v. Campbell*, 353 F.3d 880, 892 (11th Cir. 2003). Morris has made no such showing. Morris has failed to demonstrate a "fundamental miscarriage of justice" because there is no evidence that he is actually innocent.

Finally, even if Morris' claims were not procedurally barred, they would fail on the merits. In denying these claims, the Florida Supreme Court found:

> In his third claim, Morris asserts that the jury instruction on the aggravator of murder committed during the course of an enumerated felony, and the instruction on the role of the jury are unconstitutional. Because trial counsel did not object to these instructions, this claim is procedurally barred. *See Johnson v. State*, 903 So.

---

[17]In his federal habeas petition, Morris does not raise an independent claim of ineffective assistance of trial counsel in failing to challenge the constitutionality of the jury instructions. To the extent Morris' federal habeas petition may be liberally construed as raising an ineffective assistance of trial counsel claim in failing to object to these jury instructions, the claim is vague and conclusory, unexhausted, and without merit.

2d 888, 899 (Fla.) ("Because no objection was raised at trial, the claim is procedurally barred."), *cert. denied*, 126 S. Ct. 802, 163 L. Ed. 2d 632 (2005). Even if not barred, this claim is without merit because this Court has previously rejected it on appeal. *See Blanco v. State*, 706 So. 2d 7, 11 (Fla. 1997) (rejecting claim that the murder in the course of a felony aggravating circumstance is unconstitutional); *Melendez v. State*, 612 So. 2d 1366, 1369 (Fla. 1992) (rejecting claim that standard instruction on the role of the jury diluted the jury's sense of responsibility).

*Morris v. State*, 931 So. 2d at 837 n.14.

As to Morris' claim that the trial court's jury instruction diminished the jury's sense of responsibility for Morris' sentence, the claim lacks merit. "*Caldwell's* rule is to the effect that jurors who are called upon to serve in the sentencing phase of a capital case must not be misled into believing that their responsibility is less than it really is under the law." *Stewart v. Dugger*, 847 F.2d 1486, 1490-91 (11th Cir. 1988)(citing *Caldwell v. Mississippi*, 472 U.S. 320 (1985)).

In Morris' case, the trial court instructed the jury:

As you have been told, the final decision about what sentence to impose is my responsibility; however, your advisory sentence is entitled by law to great weight by this court. And it is only under rare circumstances that I would impose a sentence other than what you recommend.

(Dkt. 23, Ex. A-35 at R. 4581-82). The trial court's instruction was a correct statement of Florida law. *See, Combs v. State*, 525 So. 2d 853, 858 (Fla. 1988) (in Florida, the jury's sentencing recommendation in a capital case is only advisory); *Tedder v. State*, 322 So.2d 908, 910 (Fla. 1975) (a jury's recommendation must be given great weight by the sentencing judge).

Morris has failed to demonstrate that the jurors were misled as to their role in sentencing or that their sense of responsibility was diminished in any way. The jury was advised that its recommendation was entitled to "great weight." "Nothing was said which would imply to the jury that its recommendation was superfluous or that the importance of the jury's decision was

lessened by the fact that it was only a recommendation." *Harich v. Wainwright*, 813 F.2d 1082, 1101 (11th Cir. 1987). *See also, Johnston v. Singletary*, 162 F.3d 630, 644 (11th Cir. 1998) ("Because we find that the prosecutor's and court's comments to the jury did not serve to diminish the jurors' sense of involvement or responsibility with respect to Johnston's sentence, and because these same challenged remarks accurately described the jury's advisory role during a capital trial under Florida law, Johnston's *Caldwell* claim does not afford a basis for habeas relief.").

Likewise, Morris' claim that the jury instruction on the aggravator "commission of a murder during the course of a robbery" is unconstitutional also lacks merit. The United States Supreme Court has held that it is permissible to use an element of the underlying crime as an aggravating circumstance during the penalty phase of a trial. *See Lowenfield v. Phelps*, 484 U.S. 231 (1988). *See also, Johnson v. Singletary*, 991 F.2d 663, 669 (11th Cir. 1993)("Nothing in *Stringer* indicates that there is any constitutional infirmity in the Florida statute which permits a defendant to be death eligible based upon a felony murder conviction, and to be sentenced to death based upon an aggravating circumstance that duplicates an element of the underlying conviction.")(discussing *Stringer v. Black*, 503 U.S. 222 (1992)).

Morris has failed to show that the Florida Supreme Court's denial of these claims was contrary to or an unreasonable application of clearly established federal law. Ground Twelve will, therefore, be denied.

GROUND THIRTEEN

Mr. Morris's trial court proceedings were fraught with procedural and substantive error, which cannot be harmless when viewed as a whole since the combination of errors deprived him of the fundamentally fair trial guaranteed under the 6th, 8th, and 14th Amendments.

In Ground Thirteen, Morris asserts that the cumulative effect of the number and type of errors violated his right to a fair trial. As all of Morris' individual claims are without merit, his cumulative error claim must fail. *See, e.g., United States v. Taylor*, 417 F.3d 1176, 1183 (11th Cir.), *cert. denied*, 546 U.S. 1047 (2005) ("There being no error in any of the district court's rulings, the argument that cumulative trial error requires that this Court reverse [the defendant]'s convictions is without merit."). *See also, Mullen v. Blackburn*, 808 F.2d 1143, 1147 (5th Cir. 1987) (Petitioner could not obtain habeas relief through aggregation of individual meritless claims he had averred; twenty times zero is zero); *Moore v. Reynolds*, 153 F.3d 1086, 1113 (10th Cir.1998) ("Cumulative error analysis applies where there are two or more actual errors; it does not apply to the cumulative effect of non-errors."), *cert. denied*, 526 U.S. 1025 (1999); *United States v. Easter*, 66 F.3d 1018, 1023 (9th Cir. 1995) (The court having found no error in the district court's rulings, there is, *a priori*, no cumulative effect error).

Accordingly, Ground Thirteen does not warrant habeas corpus relief.

## GROUND FOURTEEN

Mr. Morris's 8th Amendment right against cruel and unusual punishment will be violated as he may be incompetent at the time of execution.

In Ground Fourteen, Morris essentially asserts that he may be incompetent at the time of his execution because he has been incarcerated since 1994, and "[s]tatistics have shown that an individual incarcerated over a long period of time will diminish his mental capacity." (Dkt. 1 at pg. 55). Petitioner raised this claim in his state Petitioner for Writ of Habeas Corpus, and in denying the claim the Florida Supreme Court stated "[t]his claim is not ripe for review as no death warrant has been signed. *See Griffin v. State*, 866 So. 2d 1, 21-22 (Fla. 2003) ("While

Griffin is under a death sentence, no death warrant has been signed and his execution is not imminent. Thus, the issue of Griffin's sanity for execution is not ripe . . . .")." *Morris*, 931 So. 2d at 837 n. 15.

Morris acknowledges that Florida law requires that a death warrant be issued before a claim of incompetence can be asserted (Dkt. 1 at pg. 54). Morris also acknowledges that the same holding exists under federal law (Id. at pg. 55).[18] Accordingly, Morris only raises this claim to preserve it for future review (Id.).[19]

This claim is not ripe for review. Accordingly, habeas relief in not warranted under Ground Fourteen.

ACCORDINGLY, the Court **ORDERS** that:

1. Petitioner's petition for writ of habeas corpus (Dkt. 1) is **DENIED**.

2. The Clerk is directed to enter judgment against Petitioner and close this case.

**DONE AND ORDERED** in Tampa, Florida, on September 30, 2009.

JAMES D. WHITTEMORE
UNITED STATES DISTRICT JUDGE

SA:sfc
Copy furnished to: Counsel of Record

---

[18]*See e.g., Panetti v. Quarterman*, 127 S. Ct. 2842, 2852 (2007)("*Ford*-based incompetency claims, as a general matter, are not ripe until after the time has run to file a first federal habeas petition.").

[19]Morris incorrectly asserts that "in order to preserve a competency to be executed claim, the claim must be raised in the initial petition for habeas corpus[.]" (Dkt. 1 at pg. 55). *See Tompkins v. Sec'y, Dep't of Corr.*, 557 F.3d 1257, 1259 (11th Cir. 2009) ("[A] petitioner's *Ford v. Wainwright*, 477 U.S. 399, 106 S.Ct. 2595, 91 L. Ed. 2d 335 (1986), claim of incompetency to be executed because of his mental condition at the time of the scheduled execution is not one that is required to be brought in an initial habeas petition on pain of being treated as a second or successive petition. *Panetti*, 127 S. Ct. at 2855.").